No. 23-20480

# In the United States Court of Appeals for the Fifth Circuit

The Woodlands Pride, Incorporated; Abilene Pride Alliance; Extragrams L.L.C.; 360 Queen Entertainment, L.L.C.; Brigitte Bandit,

*Plaintiffs-Appellees*,

*v.*

Warren Kenneth Paxton, In an official capacity as Attorney General of Texas; Brett Ligon, in an official capacity as District Attorney of Montgomery County; Montgomery County, Texas; James Hicks, in an official capacity as District Attorney of Taylor County; Taylor County, Texas; City of Abilene, Texas,

*Defendants-Appellants.*

On Appeal from the United States District Court for the Southern District of Texas, Houston Division

**APPELLANT'S REPLY IN SUPPORT OF OPPOSED MOTION FOR STAY PENDING APPEAL**

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Lanora C. Pettit
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

William F. Cole
Assistant Solicitor General

Counsel for Defendant-Appellant Attorney General Paxton

## TABLE OF CONTENTS

Introduction ............................................................................................................... 1
Argument .................................................................................................................. 2
    I.   The Attorney General Is Likely to Succeed on Appeal............................... 2
        A.  Plaintiffs lack standing. ....................................................................... 2
           1.   Plaintiffs lack an injury-in-fact......................................................... 2
           2.   Any hypothetical injury Plaintiffs may suffer is not fairly traceable to the Attorney General. ................................................. 5
        B.  S.B. 12 does not violate the First Amendment. ................................... 6
           1.   S.B. 12 does not implicate the First Amendment. ......................... 7
           2.   S.B. 12 survives constitutional scrutiny. ......................................... 7
           3.   S.B. 12 is not overbroad. ................................................................. 9
           4.   S.B. 12 is not unconstitutionally vague. ........................................ 10
    II.  The Remaining Factors Favor a Stay......................................................... 10
Conclusion ............................................................................................................... 11
Certificate of Service................................................................................................ 12
Certificate of Compliance ....................................................................................... 12

## Introduction

Plaintiffs' response underscores the fundamental errors behind the district court's sweeping injunction prohibiting the Attorney General from enforcing any part of S.B. 12—not to mention why facial, pre-enforcement challenges such as this are disfavored. At trial, Plaintiffs disclaimed any interest in staging "sexually oriented performances" involving either nudity or "sexual conduct" in front of children. Nevertheless, they insist that S.B. 12, which prohibits only such conduct—and, even then, only if the performances "appeal to the prurient interest in sex"—violates the First Amendment because it might implicitly regulate their theatrical "drag shows." Though the record reflects Plaintiffs' shows involve clothed performers, they hypothesize that wardrobe malfunctions and other inadvertent conduct might fall within S.B. 12's prohibitory sweep. In a rush to accepting that false premise, the district court ignored that Plaintiffs lack Article III standing to sue the Attorney General, let alone a valid First Amendment claim under existing doctrine.

To bring their already speculative injury within the narrow scope of the Attorney General's narrow enforcement authority (and thus establish traceability), Plaintiffs' response recasts their organizations as exerting legal "control" over the "commercial enterprises" that host their performances. They can point to no evidence in the record supporting such control. Nor can they point to any caselaw supporting their theory that graphic sexual conduct is constitutionally protected, or that by regulating it S.B. 12 places cheerleading, dancing, and live theater in its crosshairs. Because the Attorney General is likely to prevail on both case-dispositive issues, and equity disfavors federal-court invalidation of state laws before any state court has had the

opportunity to interpret that law or any state executive to enforce it, the Court should stay the injunction pending appeal.

## Argument

### I. The Attorney General Is Likely to Succeed on Appeal.

#### A. Plaintiffs lack standing.

The Court should stay the district court's sweeping injunction at the outset because Plaintiffs failed to establish either a cognizable injury or that such injury is traceable to the Attorney General.

##### 1. Plaintiffs lack an injury-in-fact.

Plaintiffs lack any concrete "injury" sufficient to confer Article III standing because their proposed conduct is not even arguably barred by S.B. 12. Mot. 6-9. Neither of Plaintiffs' responses has merit.

*First*, Plaintiffs insist (at 9) that it is "false" that they disclaimed any intent to violate S.B. 12's specific terms. But when counsel read the statutory definitions of "sexual conduct" to Plaintiffs and asked if their (clothed) performers wished to engage in such conduct, Plaintiffs repeatedly stated "no." *See* ROA.1472-73, 1550-51, 1664-65.

*Second*, Plaintiffs assert (at 10-11) that due to their costuming, accessories, or dancing, their performers' conduct *might* constitute "nudity" or fall within four of the five statutorily defined categories of sexual conduct. To start, Plaintiffs contend (at 10) that, because their (clothed) performers sometimes experience wardrobe malfunctions, the performers may qualify as "nude" under Texas Penal Code

2

§ 43.28(a)(2)(A)(i). But it is entirely speculative that such mishaps would fit within the definition of "nude" incorporated in S.B. 12 because such a performer presumably will not be "entirely unclothed." Tex. Bus. & Com. Code § 102.051(1)(A). Even if he is, such a state of accidental undress, is not "feature[d]," Tex. Penal Code § 43.28(a)(2)(A)(i), and the performer lacks the *mens rea* required to satisfy Texas criminal law, *id.* § 6.02; *accord* Tex. Bus. & Com. Code § 102.051(1)(B) (implying intent through use of verb "leaves").

Plaintiffs next argue (at 10-11) that dancing while using "accessories and prosthetics" such as "packers" or "breast plates" might be considered "sexual gesticulations" or an "exhibition" of "male or female genitals in a lewd state, including a state of sexual stimulation or arousal" in violation of Texas Penal Code section 43.28(a)(1)(B) and (E). Even if this were sufficient at the pleading stage, at trial their witnesses expressed a desire to dance in Conga lines, "twerk," or "shimmy[] their shoulders." ROA.1400, 1525, 1547-48. Plaintiffs have never explained how these routines would be considered "sexual gesticulations," or why the use of "packers" and "breast plates" would be "lewd"—a commonplace, *New York v. Ferber*, 458 U.S. 747, 765 (1982), if undefined term whose "plain meaning" is "obscene or indecent; tending to moral impurity or wantonness," *State v. Bolles*, 541 S.W.3d 128, 138 (Tex. Crim. App. 2017). To the contrary, Plaintiffs repeatedly testified that their performances are *not* sexual in nature, ROA.1466, 1544-45, 1581-82, and that their accessories merely give the "illusion" of a particular "gender or a character," ROA.1390, 1391, 1410-11, 1453, 1469, 1572. They were also unequivocal that

3

"packers" are not "intended to simulate an erection" or "worn on the outside of clothing." ROA.1469.

Plaintiffs next argue (at 11) that performers who "simulat[e] or actually smack[] buttocks, receiv[e] tips in cleavage, and sit[] on laps" (either of other performers or audience members) might violate Tex. Penal Code section 43.28(a)(1)(D) by engaging in contact "between one person and the buttocks, breast or any part of the genitals of another person." But apart from one incident of accidental contact during a Conga line, ROA.1525-26, Plaintiffs cite testimony discussing conduct at *adult-*themed shows, ROA.1442-43, 1577-78, 1581, with *adult* audiences, *see* ROA.1439, 1566-67, 1571-73, 1577-78. Whatever the constitutional status or artistic merits of such shows, S.B. 12 proscribes only "sexually oriented performances" "in the presence of" minors. Tex. Health & Safety Code § 769.002(a). Nor could Plaintiffs' adult-themed shows be fairly considered "in the presence of" minors who may witness them from *off-premises*, for at least two reasons. *Contra* Opp. 12. *First*, the ordinary meaning of "presence" denotes "[c]lose physical proximity coupled with awareness." *Black's Law Dictionary* 1432 (11th ed. 2019). *Second*, the sort of incidental or fleeting exposure that can be supported by the record, *see* Mot. 8, would again not meet S.B. 12's implied *mens rea* requirement. *Supra* at 3; Mot. 8-9; *see* Tex. Health & Safety Code § 769.001(2) (incorporating penal-code "meaning" of "sexually oriented performances" into civil-penalty provision).

Finally, Brigitte Bandit postulates (at 11) that her use of "a dildo as a prop for comedic effect" might constitute "the exhibition of a device designed and marketed as useful primarily for the sexual stimulation of male or female genitals." Tex. Penal

Code § 43.28(a)(1)(C). Yet Bandit testified that she uses this prop at her *adults*-only shows. ROA.1571, 1577-78. Moreover, use of a prop for "comedic effect" does not constitute an "appeal[] to the prurient interest in sex" as required by S.B. 12. Mot. 8.

### 2. Any hypothetical injury Plaintiffs may suffer is not fairly traceable to the Attorney General.

Even if Plaintiffs had somehow shown a cognizable injury, they offered no evidence that they "control[]" a premises of a "commercial enterprise" within the meaning of S.B. 12. Because the Attorney General may enforce S.B. 12 only as to such enterprises, any hypothetical injury is not fairly traceable to him. Mot. 9-12. Again, neither of Plaintiffs' responses has merit.

*First*, Plaintiffs respond (at 13) that 360 Queen Entertainment, Abilene Pride Alliance, and The Woodlands Pride can be considered to control the venues their performers use because they can be likened to a "general contractor" with an "ongoing contractual relationship" to construct scaffolding, *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 474, 476 (Tex. 2017); a "lessee" who orally leased a premises "without a right of re-entry" by the owner, *Johnson Cnty. Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285-86 (Tex. 1996); or an "insurance company" who exercises a "contractual" right to control an insured's property to undertake an investigation, *W. Hills Bowling Ctr., Inc. v. Hartford Fire Ins. Co.*, 412 F.2d 563, 565-66 (5th Cir. 1969).

The record Plaintiffs developed at trial does not support any such analogy because they have offered no evidence of a contractual or legal right to "control" the venues at issue. Abilene Pride Alliance and Woodlands Pride are, at most, "business

5

invitees" of local coffee shops which allow them to utilize their spaces when closed. *See* Mot. 11. And though 360 Queen Entertainment has an unspecified "agreement" with one of the founders' fathers to host occasional "drag" shows on the patio of the father's restaurant, ROA.1413-15, Plaintiffs have offered no evidence of a *legal* relationship conferring a right to control that patio similar to that between a property owner and a general contractor, a lessee and a landlord, or an insurer and insured. *Contra* Opp. 13-14.

*Second*, Plaintiffs contend (at 14-15) they have established traceability based "on the predictable effect of Government action on third parties," *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019), because "[i]f the Attorney General stops commercial enterprises from hosting Plaintiffs' performances, that enforcement authority directly harms Plaintiffs." But at trial Plaintiffs did not identify a single "commercial enterprise" that refused to host their performances based on a putative future enforcement action, let alone that it would preclude Plaintiffs from engaging in their desired expression in other venues or with only adults present. As a result, the Attorney General is likely to show their speculation about what *could* happen does not satisfy Article III. *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 410 (2013).

### B. S.B. 12 does not violate the First Amendment.

The Attorney General is also likely to prevail on appeal because none of the parts of S.B. 12 that he enforces violates the First Amendment.[1]

---

[1] Because the Attorney General does not enforce Texas Local Government Code section 243.0031 ("Section 2"), he does not address the district court's conclusion that it operates as a prior restraint on speech. ROA.1292-93. Moreover, the district

### 1. S.B. 12 does not implicate the First Amendment.

Plaintiffs failed to demonstrate that the "sexual conduct" covered by S.B. 12—as opposed to possible iterations of their theatrical "drag shows"—is inherently expressive. Mot. 13-14. Because "only conduct that is 'inherently expressive' is entitled to First Amendment protection," this dooms Plaintiffs' claim. *Nat'l Press Photographers Ass'n v. McCraw*, 84 F.4th 632, 648 (5th Cir. 2023).

Plaintiffs' only response (at 16) is to note that "[s]exual expression which is indecent but not obscene is protected by the First Amendment" under *Reno v. ACLU*, 521 U.S. 844, 874 (1997). Plaintiffs ignore, however, that the federal government did not even bother to contest that the "sexual expression" at issue in *Reno* included "speech." It couldn't. "The breadth of [the relevant law's] coverage [was] wholly unprecedented," *id.* at 877, and included "any comment, request, suggestion, proposal, image, or other communication" made on the Internet, *id.* at 858, 859. Because the regulated "expression" indisputably included speech, *Reno* had no cause to consider what sexual *conduct* might be "inherently expressive," and thus "entitled to First Amendment protection." *McCraw*, 84 F.4th at 648.

### 2. S.B. 12 survives constitutional scrutiny.

Assuming S.B. 12 regulates some First-Amendment-protected conduct, it easily survives intermediate scrutiny under *City of Renton v. Playtime Theaters, Inc.*,

---

court's severability ruling is irrelevant as it did *not* conclude that those provisions the Attorney General enforces are inseverable from Section 2. *See* ROA.1272-73.

475 U.S. 41 (1986), which applies to regulations targeted at the secondary effects of adult entertainment.[2] Mot. 16-18.

Plaintiffs complain that "there is no evidence in the legislative history or trial record that 'supports a link between the regulated business and targeted secondary effects.'" Opp. 18 (quoting *Ass'n of Club Execs. of Dall. v. City of Dallas*, 83 F.4th 958, 966 (5th Cir. 2023)). Leaving aside that this argument seems to presume that the regulated business is theatrical "drag" shows, this misstates the government's "light burden" under *Renton*. *Ass'n of Club Execs.*, 83 F.4th at 967. "'[A] single study and common experience'" can suffice to show that the law is appropriately tailored to address the secondary effects of adult conduct. *Id.* at 968. S.B. 12 easily clears this hurdle: Even Plaintiffs' counsel conceded the commonsense point that sexually explicit content can harm children. ROA.1483. And the legislative record is replete with testimony confirming these same points. *See, e.g.*, Hearing on S.B. 12 Before the S. Comm. on State Affairs, 88th Leg., R.S. at 1:00:00-1:08:00 (Mar. 23, 2023), https://tinyurl.com/5yj5hkbx.[3]

---

[2] Because the law is targeted at the adverse secondary effects of "sexually oriented performances" on minors, it is neither content nor viewpoint based. *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) (describing viewpoint discrimination as a "form of content discrimination").

[3] The Attorney General's expert witness—whose testimony was wrongly excluded, Mot. 17—also testified that exposure of minors to sexually explicit conduct may lead to various "interpersonal[] [and] social[]" problems, ROA.1501, including "chronic masturbation" and "sexual deviance," ROA.1504.

### 3. S.B. 12 is not overbroad.

Assuming S.B. 12 improperly restricts some amount of First-Amendment-protected conduct, Plaintiffs' facial challenge to S.B. 12 still fails because they did not demonstrate that any "unconstitutional applications" of the statute are "substantially disproportionate to the statute's lawful sweep." *United States v. Hansen*, 599 U.S. 762, 770 (2023). The Supreme Court recently reiterated that this requires the courts to look at "realistic" applications of the statute. *Id.* Rather than do so, the district court speculated that S.B. 12 might apply to "cheerleading, dancing, live theater, and other common occurrences." ROA.1288. Plaintiffs adduced no legal authority or evidence at trial that such activities appeal to the prurient interest in sex—assuming they even meet the other elements of the statute (which they do not). Mot. 14-15.

Besides summarily asserting (at 19) these activities *do* meet the statute's definition of "sexually oriented performance," Plaintiffs' only response is the phrase "prurient interest in sex" does not limit S.B. 12's scope because the Legislature did not recite verbatim the test for obscenity from *Miller v. California*, 413 U.S. 15 (1973). This conflates two issues: whether the conduct at issue meets the constitutional standard for obscenity and whether cheerleading "appeals to the prurient interest" as required by S.B. 12. As the Supreme Court recognized seven decades ago, "prurient interest" has a plain, ascertainable meaning existing independently of the word "obscene." *See Roth v. United States*, 354 U.S. 476, 487 n.20 (1957).

### 4. S.B. 12 is not unconstitutionally vague.

Finally, for similar reasons, the phrases "prurient interest in sex" and "lewd" are not unconstitutionally vague. Again citing *Reno*, Plaintiffs argue (at 21) that the phrase "prurient interest in sex" is vague when it is divorced from the other three prongs of the test for obscenity. Yet the vagueness problem in *Reno* was that the term "patently offensive" was not "defined by the applicable state law." 521 U.S. at 873. Here, however, "sexually oriented performance" was painstakingly defined by the Legislature, *see* Tex. Penal Code § 43.28, using terms whose meaning has been developed over decades of judicial interpretation. Mot. 18-20.

## II. The Remaining Factors Favor a Stay.

The remaining factors favor a stay. Mot. 20. "When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam). And "[b]ecause the State is the appealing party, its interest and harm merge with that of the public." *Id.* That is especially true here where the statute is designed to protect children from the effects of conduct in which, when asked at trial, Plaintiffs disclaimed any interest in engaging. *Supra* at 2.

Plaintiffs respond (at 6-8, 23) that a stay of the district court's injunction would work irreparable harm on them because it would permit enforcement to begin (and thereby upset the status quo). That is true of any new law, however, and "is not enough, standing alone, to outweigh the other factors." *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013).

## Conclusion

The Court should stay the permanent injunction pending appeal.

                                                Respectfully submitted.

| | |
|---|---|
| Ken Paxton<br>Attorney General of Texas | /s/ Lanora C. Pettit<br>Lanora C. Pettit<br>Principal Deputy Solicitor General<br>Lanora.Pettit@oag.texas.gov |
| Brent Webster<br>First Assistant Attorney General | |
| | William F. Cole<br>Assistant Solicitor General |
| Office of the Attorney General<br>P.O. Box 12548 (MC 059)<br>Austin, Texas 78711-2548<br>Tel.: (512) 936-1700<br>Fax: (512) 474-2697 | Counsel for Defendant-Appellant Attorney General Paxton |

## Certificate of Service

On November 13, 2023, this document was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Lanora C. Pettit
Lanora C. Pettit

## Certificate of Compliance

This document complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,598 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Lanora C. Pettit
Lanora C. Pettit