**Case No. 23-20480**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

**The Woodlands Pride, Incorporated; Abilene Pride Alliance; Extragrams, L.L.C.; 360 Queen Entertainment, L.L.C.; Brigitte Bandit,**

*Plaintiffs – Appellees,*

**v.**

**Warren Kenneth Paxton, In an official capacity as Attorney General of Texas; Brett Ligon, In an official capacity as District Attorney of Montgomery County; Montgomery County, Texas; James Hicks, In an official capacity as District Attorney of Taylor County; Taylor County, Texas; City of Abilene, Texas,**

*Defendants – Appellants.*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION
Civil Action No. 4:23-CV-2847

---

**BRIEF OF APPELLANTS:**
**Montgomery County, Texas and Brett Ligon in an official capacity as District Attorney**

---

Daniel Plake
SBN: 24062942
FED ID No.: 918023
501 N. Thompson, Ste. 300
Conroe, Texas 77301
Tel: (936) 539-7828
Fax: (936) 760-6920
Daniel.Plake@mctx.org
ATTORNEY FOR APPELLANTS, Brett Ligon, and Montgomery County, Texas

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**THE WOODLANDS PRIDE, INCORPORATED;**  *Appellees*
**ABILENE PRIDE ALLIANCE;**
**EXTRAGRAMS, L.L.C.;**
**360 QUEEN ENTERTAINMENT, L.L.C.;**
**BRIGITTE BANDIT**

**BRIAN KLOSTERBOER,**  *Counsel for Appellees*
**ALISON D. ANDREWS,**
**CHLOE KEMPF,**
**THOMAS BUSER-CLANCY,**
**EDGAR SALDIVAR,**
**ADRIANNA PINON,**
**MADELEINE R. DWERTMAN,**
**KATHERINE E. JEFFRESS,**
**DEREK R. MCDONALD,**
**ADRIANA C. PINON,**
**BRANDT T. ROESSLER,**
**EMILY ROHLES**
ACLU Foundation of Texas, Inc.
P.O. Box 836
Houston, TX 77288

**WARRANT KENNETH PAXTON,** In an official  *Appellant*
capacity as Attorney General of Texas

**WILLIAM F. COLE,**  *Counsel for Appellant,*
**TAYLOR K. GIFFORD,**  *Appellate Counsel*
**LANORA C. PETTIT**
Office of the Texas Attorney General
Solicitor General Division

P.O. Box 12548, Capital Station
Austin, TX 78711

**TAYLOR K. GIFFORD,**
**CHARLES K. ELDRED,**
**JOHNATHAN STONE**
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711

*Counsel for Appellant,*
*Trial Counsel*

**BRETT LIGON,** in an official capacity as District
Attorney of Montgomery County;
**MONTGOMERY COUNTY, TEXAS**

*Appellant*

**B. D. GRIFFIN,** Montgomery County Attorney,
**DANIEL PLAKE**
Montgomery County Attorney's Office
501 N. Thompson, Ste. 300
Conroe, Texas 77301

*Counsel for Appellant*

**JAMES HICKS,** In an official capacity as District
Attorney of Taylor County;
**TAYLOR COUNTY, TEXAS**

*Appellant*

**ROBERT B. WAGSTAFF**
McMahon Surovik Suttle, P.C.
400 Pine Street, Suite 800
Abilene, TX 79601

*Counsel for Appellant*

**CITY OF ABILENE, TEXAS**

*Appellant*

**RAMON G. VIADA, III**
Viada & Stayer
17 Swallow Tail Court, Suite 100
The Woodlands, TX 77381

*Counsel for Appellant*

The Honorable **DAVID HITTNER**

*United States District*
*Court Judge – trial judge*

_____s/ Daniel Plake_____

Attorney of Record for Brett Ligon in an
official capacity as District Attorney and
Montgomery County, Texas

## STATEMENT REGARDING ORAL ARGUMENT

Appellees, Montgomery County, Texas and Brett Ligon believe this case warrants oral argument because the issues presented resolve around government liability and classification of Texas District Attorneys as local or state officials.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .......................................................... i

STATEMENT REGARDING ORAL ARGUMENT ............................................. iv

TABLE OF CONTENTS ............................................................................................ v

TABLE OF AUTHORITIES ................................................................................ viii

JURISDICTIONAL STATEMENT .......................................................................... 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................ 1

STATEMENT OF THE CASE ................................................................................... 2

    Relevant procedural history: ................................................................................. 2

    Facts Relevant to Issues Submitted for Review: ................................................. 4

    Rulings Presented for Review: .............................................................................. 6

SUMMARY OF THE ARGUMENT ......................................................................... 7

ARGUMENT ............................................................................................................... 9

    Standard of Review: ............................................................................................... 9

**Issue 1:** *The Trial Court committed reversible error by failing to apply the Monell elements to the claims against Montgomery County.* ............. 10

    A.    Woodlands Pride did not identify a Montgomery County policy maker or policy: ................................................................................................. 10

    B.    County Action Pursuant to SB 12 Section 2: ........................................... 13

    C.    County Action Pursuant to SB 12 Section 3: ........................................... 14

    D.    Summary: ................................................................................................... 16

**Issue 2:** *Woodlands Pride does not have standing to sue Montgomery County because there is not a ripe case or controversy.* .................................. 16

    A.    Woodlands Pride's claims against Montgomery County are not ripe: .... 17

1.    *Woodlands Pride must establish that all claims against Montgomery County are ripe.* ..................................................................17

2.    *Woodlands Pride's claim regarding the potential adoption of SB 12 Section 2 by Montgomery County is not ripe.* .......................18

3.    *Summary.* .................................................................................20

B.    Woodlands Pride Lacks Article III Standing because there is not a case or controversy between it and Montgomery County. ..................................20

1.    *Woodlands Pride must establish standing for each claim.* ...................20

2.    *Woodlands Pride did not have or need a law enforcement contract with Montgomery County.* ...............................................................22

3.    *Permit application.* ....................................................................22

4.    *Law enforcement.* .....................................................................24

5.    *Summary* ..................................................................................25

**Issue 3:**    ***District Attorney Brett Ligon's general duty to enforce state law does not waive his immunity from Woodlands Pride's pre-enforcement facial challenge to a statute.*** ...........................................26

A.    The Trial Court incorrectly determined that general enforcement authority is sufficient to invoke *Ex parte Young* in a pre-enforcement First Amendment case: ...................................................................26

B.    Montgomery County District Attorney Brett Ligon is a State official: ...27

C.    As a State Official, Brett Ligon is entitled to sovereign immunity: ........30

D.    The *Ex parte Young* exception to sovereign immunity does not apply in this case: ...............................................................................31

E.    Summary: ...................................................................................33

**Issue 4:**    ***Claims against Montgomery County and Brett Ligon in his official capacity as District Attorney are mooted by any relief granted against The Attorney General.*** .................................................33

CONCLUSION .................................................................................35

CERTIFICATE OF SERVICE .................................................................35

CERTIFICATE OF COMPLIANCE......................................................36

# TABLE OF AUTHORITIES

## Cases

*Air Evac EMS, Inc. v. Tex. Dep't of Ins.*, 851 F.3d 507 (5th Cir.2017) .................29

*Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) ..............26

*Arnone vs. County of Dallas County, Texas,* 29 F.4th 262 (5th Cir.2022)...... passim

*Barilla v. City of Houston*, 13 F.4th 427 (5th Cir.2021).........................................19

*Buckley v. Valeo*, 424 U. S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).....................16

*Canales v. Laughlin,* 147 Tex. 169 , 214 S.W.2d 451 (1948) .................................11

*City of Austin v. Paxton*, 943 F.3d 993 (5th Cir.2019) .............................. 25, 29, 30

*Coleman v. Caruso*, 413 Fed. Appx. 866 (6th Cir.2011) (unpublished) ................32

*Coleman v. Granholm,* No. 06-12485, 2007 WL 2461695 (E.D. Mich. Aug. 27, 2007)...................................................................................................................32

*Coury v. Prot*, 85 F.3d 244 (5th Cir.1996) ...............................................................8

*Crane v. Texas,* 766 F.2d 193 (5th Cir.1985) .........................................................26

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006)...................................................................................................................19

*Daves v. Dallas Cnty.*, 22 F.4th 522 (5th Cir.2022) (en banc)............. 12, 13, 23, 26

*Davis v. Federal Elec. Comm'n*, 554 U.S. 724, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008)...................................................................................................................19

*DM Arbor Court, Ltd. v. City of Houston*, 988 F.3d 215 (5th Cir.2021)................16

*Echols v. Parker,* 909 F.2d 795 (5th Cir.1990)................................................. 12, 27

*Esteves v. Brock,* 106 F.3d 674 (5th Cir.1997) .......................................................26

*Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004)...................................................................................................................29

*Guzman v. Hacienda Records and Recording Studio, Inc.,* 808 F.3d 1031 (5th

Cir.2015) ....................................................................................7

*Harper v. Lindsay,* 616 F.2d 849 5th Cir. 1980) ....................................11

*Harris County v. Carmax Auto Superstores Inc.,* 177 F.3d 306 (5th Cir.1999)......32

*Howeryr v. Allstate Ins. Co,* 243 F.3d 912 (5th Cir.2001) .........................7

*Huawei Techs. USA, Inc. v. FCC,* 2 F.4th 421 (5th Cir.2021) ................16

*Hudson v. City of New Orleans,* 174 F.3d 67 (5th Cir.1999) ................................25

*Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)....................................................................................8, 14

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1991)....................................................................................7

*Los Angeles County v. Humphries*, 562 U.S. 29, 131 S.Ct. 447, 178 L.Ed.2d 460 (2010)....................................................................................11

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ....................................................................................18

*McMillian v. Monroe County,* 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed. 2d 1 (1997) .................................................................................. 13, 26

*Morris v. Livingston*, 739 F.3d 740 (5th Cir.2014)................................30

*Mowbray v. Cameron County, Tex.,* 274 F.3d 269, (5th Cir.2001)........................13

*Nat'l Press Photographers Ass'n v. McCraw,* 504 F. Supp. 3d 568 (W.D. Tex.2020) (Pittman, J.)........................................................24

*Nat'l Press Photographers Ass'n v. McCraw,* 84 F.4th 632 (5th Cir.2023) .............. .................................................................................. 25, 30, 31

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583 (5th Cir.1987)....................................................................................16

*Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891 (5th Cir.2000)....................................15

*Quinn v. Roach,* 326 Fed.App. 280 (5th Cir.2009) (unpublished) .........................27

*Roark & Hardee LP v. City of Austin*, 522 F.3d 533 (5th Cir.2008)......................15

*Robinson v. Hunt Cty.*, 921 F.3d 440 (5th Cir.2019)..............................................11

*Sherwin Williams Co. v. Holmes Cty.*, 343 F.3d 383 (5th Cir.2003)......................15

*Shields v. Norton*, 289 F.3d 832 (5th Cir. 2002).....................................................15

*Spikes v. Phelps,* 131 Fed.Appx. 47 (5th Cir.2005) (not published) ......................27

*Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980)................................................................................................25

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014)........................................................................................................................19

*Tex. Democratic Party v. Abbott*, 961 F.3d 389 (5th Cir. 2020) ............... 28, 29, 30

*Tex. Democratic Party v. Abbott*, 978 F.3d 168 (5th Cir. 2020) ...................... 25, 30

*Texas All. for Retired Americans. v. Scott*, 28 F4th 669 (5th Cir.2022).................30

*Texas v. United States*, 523 U.S. 296, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998)....16

*Turner v. Upton County,* 914 F.2d 133 (5th Cir.1990)..................................... 13, 22

*Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211 (5th Cir.2023).........................19

*United Transp. Union*, 205 F.3d 851 (5th Cir.2000) ...............................................15

*Urban Developers LLC v. City of Jackson, Miss.*, 468 F.3d 281 (5th Cir.2006) ....16

*Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002)................................................................................................30

**Statutes**

42 U.S.C. § 1983 ...............................................................................................8, 24

TEX. ALCO. BEV. § 11.31 ..............................................................................................5

TEX. GOV'T CODE § 45.270....................................................................................27

Tex. Gov't. Code § 43.105................................................................ 4, 24, 27, 28

**Constitutional Provisions**

U.S. CONST. art. III, § 2 ..........................................................................18

## JURISDICTIONAL STATEMENT

The Woodlands Pride challenged the constitutionality of a new Texas, Senate Bill 12, law on First Amendment Grounds.  The Trial Court's subject matter jurisdiction is found in 28 U.S.C. §§ 1331 and 1343.

This Court has jurisdiction under 28 U.S.C. § 1291 as an appeal from the final decision of a district court, and under Federal Rule of Appellate Procedure 4.

On September 26, 2023, the Trial Court issued Findings of Facts and Conclusions of Law finding Senate Bill 12 unconstitutional, and ordered a Permanent Injunction barring enforcement of Senate Bill 12.  ROA.1240. Montgomery County and Brett Ligon in his official capacity as District Attorney filed their notice of appeal on October 24, 2023.

This appeal is from a final order or judgment that disposes of all parties' claims.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

**ISSUE 1:**   Whether the Trial Court erred by failing to apply the *Monell* elements to Montgomery County.

**ISSUE 2:**   Whether there is a ripe case or controversy between Montgomery County and The Woodlands Pride considering there is not interaction or dispute between the two parties.

**ISSUE 3:**   Whether *ex parte Young* waives Montgomery County District Attorney

1

Brett Ligon's immunity in this First Amendment pre-enforcement facial challenge to a statute considering his only link to the statute is a general duty to enforce state law.

**ISSUE 4:**     Whether the claims against Montgomery County and Brett Ligon in his official capacity as District Attorney are mooted by the relief granted against The Attorney General.

## STATEMENT OF THE CASE

**Relevant procedural history:**

Appellees filed their Complaint, which included a request for preliminary and permanent injunctions, on August 2, 2023.  ROA.20.  Appellees moved for a temporary restraining order on August 9, 2023.  ROA.104.  Appellees brought a pre-enforcement facial challenge against several Texas local governmental entities and elected officials to enjoin the enforcement of Senate Bill 12 because Defendants "are statutorily tasked with enforcing this unconstitutional law."  ROA.21. at ¶ 2.

On August 14, 2023, the Trial Court ordered consolidation of the Preliminary Injunction hearing and trial on the merits, and set them for final trial on August 28, 2023.[2]  ROA.240.

Counsel for Appellants Montgomery County and Brett Ligon appeared on

---

[2] The Trial Court rescheduled the trial to occur in the morning of the original trial setting. ROA.540.

August 17, 2023.  ROA.296.

On August 18, 2023, the Trial Court ordered Defendants to respond to the Motion for Temporary Restraining Order by August 23, 2023.  ROA.304.

On August 23, 2023, Appellants Montgomery County and Brett Ligon joined the other prosecutors and county defendants to file their Joint Motion to Dismiss the pending Application for Temporary Restraining Order and Motion for Injunctive Relief.  ROA.646.

On August 28, 2023, Appellees responded to the prosecutors and Counties' Motion to Dismiss.  ROA.847.

The bench trial on the merits and the hearing on the Motion for Preliminary Injunction occurred on August 28 and 29, 2023.  ROA.957, 959.

The Trial Court issued a Temporary Restraining Order on August 31, 2023.  ROA.960.  The Trial Court extended the Temporary Restraining Order on September 13, 2023.  ROA.1186.

On September 26, 2023, the Trial Court issued Findings of Facts and Conclusions of Law finding Senate Bill 12 unconstitutional, and ordered a Permanent Injunction barring enforcement of Senate Bill 12.  ROA.1240.

On October 3, 2023, the Trial Court denied all pending motions to dismiss as moot.  ROA.1328.

**<u>Facts Relevant to Issues Submitted for Review</u>:**

1. Senate Bill 12 (hereafter "SB12") "contains three separate enforcement mechanisms", described as sections 1 through 3. ROA.31. Section 1 amends the Texas Health and Safety Code and applies to commercial enterprises. *Id.* Section 2 amends the Texas Local Government Code and applies to counties and municipalities. ROA.32-33. Section 3 creates a new offense under the Texas Penal Code. ROA.33.

2. Section 2 amends Texas Local Government Code allowing municipalities and counties to "regulate sexually oriented performances as the municipality or county considers necessary to promote the public health, safety, or welfare". ROA.170. at Section 2, Sec.243.0031(b).

3. Section 2 also amends the Texas Local Government Code prohibiting municipalities and counties from "authoriz[ing]" a "sexually oriented performance" on public property or in the presence of anyone under the age of 18. ROA.170. at Section 2, Sec.243.0031(c).

4. The Woodlands Pride ("Woodlands Pride") sought relief from Montgomery County and Ligon in his official capacity as "District Attorney of Montgomery County." ROA.23. This is a misnomer, Brett Ligon is the elected District Attorney for 9th Judicial District of Texas, he is elected by the voters of Montgomery County. Tex. Gov't. Code § 43.105.

5. Mr. Rocha testified on behalf of Woodlands Pride. ROA.1508. at ln. 6-9. Woodlands Pride hosts annual festivals, including one in October of 2023. ROA.1508-09. The festival is held at Town Green park, which is located in The Woodlands, Texas. ROA.1510. ln. 6-12. The Woodlands is a Township located within the geographical boundaries of Montgomery County. *Id.,* at ln. 10-16. Town Green Park is a public park. *Id*., at ln. 19-21. The permit for the park is granted by The Woodlands Township. ROA.1513 at ln. 16-17.

6. Woodlands Pride also hosts small events at private venues. ROA.1512. ln. 21-24. Woodlands Pride is planning to host a gala in the spring of 2024 at an unknown private venue. ROA.1513. at ln. 1-9.

7. The Montgomery County Sheriff's Office provides policing services for The Woodlands Township. ROA.1513. at ln. 18-25.

8. The Township has its own council; it is not under the control of the County's Commissioners Court. *Id*.

9. Permits to sale alcohol are obtained through the Texas Alcoholic Beverage Commission ("TABC"). TEX. ALCO. BEV. § 11.31.

10. Woodlands Pride typically has County law enforcement officers at its events. ROA.1532. at ln. 24-25. However, it contracts with the off-duty officers, not Montgomery County. ROA.1556. ln. 22-24. Woodlands Pride is not required to hire off-duty officers, it can hire private security. ROA.1556. ln. 25 – ROA.1557

ln. 2.  Woodlands Pride submits its security plan to the Woodlands Township.
ROA.1533. at ln. 3-6.

11. Woodlands Pride has never sought a permit from Montgomery County.
ROA.1553. ln. 9-11.  At the time of trial, it did not have a permit application
pending with Montgomery County.  *Id.*, at ln. 16-17.

12. The Woodlands Pride did not allege or provide any evidence suggesting that
Montgomery County adopted an ordinance affecting their ability to host any
event.

13. The Woodlands Pride seeks relief against Brett Ligon in his official capacity as
District Attorney pursuant 42 U.S.C. § 1983.  ROA.58-61.  No other Appellee
seeks relief from Brett Ligon on Montgomery County.

**Rulings Presented for Review:**

The Trial Court issued a permanent injunction preventing the Appellees from
enforcing SB 12.  ROA.1240.

## SUMMARY OF THE ARGUMENT

In anticipation of an upcoming three-section law related to sexually oriented performances, The Woodlands Pride brought a pre-enforcement suit facially challenging a state statute against Montgomery County, Texas, and Brett Ligon in his official capacity as District Attorney of the 9th Judicial District of Texas.   The suit included additional similarly situation parties on both sides of the "*v.*"  After an accelerated trial setting, the Trial Court erroneously ruled in favor of Woodlands Pride.

"Section 1" of the statute does not relate to Montgomery County or District Attorney Ligon and is not addressed in this brief.

"Section 2" allows Texas counties to regulate sexually oriented performances, but does not require them to do so.  There was no evidence produced at trial that Montgomery County had even contemplated adopting any rules or ordinances related to the statute, much less took any action to that end.  The Woodlands Pride argued that they feared being denied a permit or law enforcement contract due to the statute, but their representative's own testimony showed they had never sought a permit from Montgomery County, did not have any permit applications pending, and had no reason to seek a permit from Montgomery County.  They also did not have or need a law enforcement contract with Montgomery County.  Their simply is not a ripe case or controversy between the parties.

"Section 3" creates a new criminal law related to sexually oriented performances. The Woodlands Pride sued District Attorney Ligon merely because he is a state prosecutor – not for any action he has taken or comment he has made. Even with the relaxed standard to obtain pre-enforcement injunctive relief against a state official in the First Amendment context, The Woodlands Pride failed to meet its burden.

One overarching issue throughout this case is the Woodlands Prides' absolute failure to plead or prove any of the *Monell* elements in its claim against Montgomery County. The Trial Court wholly ignored the issue, but it is dispositive as to all claims against Montgomery County.

Finally, this case involves a pre-enactment, pre-enforcement complaint about the facial constitutionality of a state statute. The Plaintiff/Appellees included the Texas Attorney General as a Defendant in this case; he defended the statute at trial. Because any relief against the Attorney General that renders the statute unconstitutional will be binding on Montgomery County and Brett Ligon, there is no reason to keep them in this suit; the claims against them are moot.

# ARGUMENT

## Standard of Review:

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed *de novo*." *Guzman v. Hacienda Records and Recording Studio, Inc.,* 808 F.3d 1031, 1036 (5th Cir.2015) (internal quotation marks and citation omitted).

"A finding of the trial judge is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks and citation omitted). "[T]he great deference owed to the trial judge's findings compels the conclusion that "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* (internal quotation marks and citation omitted). "[T]he clearly erroneous standard of review following a bench trial requires even "greater deference to the trial court's findings when they are based upon determinations of credibility." *Id.* (internal quotation marks and citation omitted).

Federal courts are courts of limited jurisdiction and, absent jurisdiction conferred by statute or the United States Constitution, are without power to adjudicate claims. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1991). The party seeking the federal forum has the burden

of establishing federal jurisdiction. *Howery v. Allstate Ins. Co,* 243 F.3d 912, 916 (5th Cir.2001). "[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir.1996).

**Issue 1:**     ***The Trial Court committed reversible error by failing to apply the Monell elements to the claims against Montgomery County.***

To maintain a 42 U.S.C. § 1983 action against a County, a Plaintiff must plead and prove three elements: "(1) a policy maker; (2) an official policy; and (3) a violation of a constitutional right whose 'moving force' is the policy or custom." *Arnone vs. County of Dallas County, Texas,* 29 F.4th 262, 265-66 (5th Cir.2022) (Internal quotations omitted).

The Trial Court acknowledged *Monell* is the mechanism by which Montgomery County may be held liable, but ignored all the elements of *Monell*. ROA.1263.

**A. Woodlands Pride did not identify a Montgomery County policy maker or policy:**

Neither Woodlands Pride nor the Trial Court identified a County policy maker or an official County policy. To impose Monell liability upon a county, "the trial judge must identify those officials who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Jett v. Dallas Indep. Sch.*

10

*Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). District Attorney Brett Ligon is the only official from Montgomery County identified by Woodlands Pride or the Trial Court in this case. As shown below, Brett Ligon is a state official and not a County policy maker. See *Issue 1 B., Issue 2 B. 1, Issue 2 B. 4, and Issue 3 B., infra*. Whether an official is a policy maker for Montgomery County is legal question and a matter of state law. *Jett,* 491 U.S. at 737.

Neither Woodlands Pride nor the Trial Court pointed to any County policy infringing upon Woodlands Pride's rights. It is undisputed that (1) there is no County policy affecting Woodlands Pride's festival, gala or any other planned or contemplated activities; (2) Woodlands Pride is not required to obtain any permit from the County for its festival, gala or any other activities; and (3) Woodlands Pride does not need nor is it required to use any County provided services for its festival, gala or other activities.

Woodlands Pride's festival is held at Town Green Park in The Woodlands, Texas. Town Green Park is owned and controlled by The Woodlands Township. The Woodlands Township, not Montgomery County, issues the permit for the use of the park for Woodlands Pride's festival. ROA.1510. ln. 6-12, 10-16, 19-21, and ROA.1513. ln. 16-17. The Woodlands Township has its own council, it is not under the control of the County's Commissioners Court. ROA.1513. at ln. 18-25. Woodlands Pride has never sought a permit from Montgomery County. ROA.1553.

ln. 9-11.  At the time of trial, it did not have a permit application pending with Montgomery County.  *Id.*, at ln. 16-17.

Mr. Rocha testified that Woodlands Pride gets its TABC[3] license through the Montgomery County Sheriff.  ROA.1514 at ln. 7-19.  However, Texas law provides: "All permits shall be applied for and obtained from the [Texas Alcoholic Beverage C]ommission."  TEX. ALCO. BEV. §§ 11.31, 1.04(10).  Furthermore, even if the Court ignores the statute and credits Mr. Rocha's testimony, Woodlands Pride did not identify the Sheriff as a policymaker in regards to the County's issuance of "TABC license[s]", nor did it identify a County policy related to the issuances of such licenses.  Woodlands Pride did not produce any evidence suggesting it had to disclose the plan to incorporate drag shows in its events to obtain a TABC license, it would be denied a TABC license, or that it could not host its events without a TABC license.

Mr. Rocha initially testified that Woodlands Pride contracts through Montgomery County for its festival security.  ROA.1514 ln. 15-20.  He later admitted Woodlands Pride did not have a security contract with Montgomery County, but rather with off-duty officers (ROA.1556. ln. 22-24); is not required to hire off-duty officers and can hire private security (ROA.1556. ln. 25 – ROA.1557.

---

[3] Texas Alcoholic Beverage Commission.

ln. 2); and submits its security plan to the Woodlands Township, not Montgomery County (ROA.1533. at ln. 3-6).

*Monell's* requirements to plead and prove a policymaker and an official policy apply to claims for injunctive or declaratory relief. *Robinson v. Hunt Cty.*, 921 F.3d 440, 447 (5th Cir.2019) (citing *Los Angeles County v. Humphries*, 562 U.S. 29, 31, 131 S.Ct. 447, 178 L.Ed.2d 460 (2010)).

Woodlands Pride simply did not plead or prove the existence of a Montgomery County policy maker or a Montgomery County policy that is the moving force of the enforcement of SB12 and the Trial Court ignored the issue.

**B. County Action Pursuant to SB 12 Section 2**:

Section 2 of SB 12 adds Section 243.001 to the Texas Local Government Code and is applicable to municipalities and counties. Appellees assert that SB12 Section 2 [specifically under subsection (c)] prohibits Montgomery County from authorizing sexually oriented performances on public property. ROA.32 – 33. Montgomery County argued that Section 243.0031(b) is a permissive grant of authority, and subpart (c), does not apply unless Montgomery County regulates sexually oriented performances, for example by requiring or issuing a permit. ROA.1369.

The plain reading of the statute shows that subsection (c) is merely a limit on the authority granted to cities and counties under subsection (b). In Texas, a county (and general law city) only have the regulatory authority authorized by state law.

*Harper v. Lindsay,* 616 F.2d 849, 853 5th Cir. 1980) citing *Canales v. Laughlin,* 147 Tex. 169 , 214 S.W.2d 451, 453 (1948). Contrary to Appellees' apparent contention, subsection (c) is a limitation on county action; not a mandate for it. The Trial Court correctly determined that Subsection (b) only gives counties the "ability" to regulate, and that Subsection (c) does not require Montgomery County to take any action regarding "sexually oriented performances". ROA.1263.

Montgomery County has taken no steps to enact any ordinance, regulation, permit requirement or any other action authorized by Section 243.001. Woodlands Pride did not assert or offer evidence suggesting that Section 243.001 was applicable to any of its planned or contemplated activities.

## C. <u>County Action Pursuant to SB 12 Section 3</u>:

SB 12 Section 3 creates a new offense under the Texas Penal Code by adding Section 43.28 to the Texas Penal Code. ROA.33. Neither Woodlands Pride nor the Trial Court identified a Montgomery County law enforcement policymaker. The record is incorrect to the extent it can be interpreted to allege Brett Ligon is the Montgomery County Policymaker for law enforcement. Brett Ligon in his official capacity as District Attorney is not a County policy maker. *Arnone,* 29 F.4th at 268-69. "When a state statute directs the actions of an official, as here, the officer, be he state or local, is acting as a state official." *Echols v. Parker*, 909 F.2d 795, 799 (5th Cir.1990). Where a plaintiff has complained actors of a local government are "acting

for the State," then "there is no case or controversy with, and no Article III jurisdiction over," the local government for which such 'state' actors serve. *Daves v. Dallas Cnty.*, 22 F.4th 522, 532 (5th Cir.2022) (en banc).

Generally, the "sheriff[4] is the county's final policymaker in the area of law enforcement[.]" *Turner v. Upton County,* 914 F.2d 133, 136 (5th Cir.1990). The District Attorney is not. *Mowbray v. Cameron County, Tex.,* 274 F.3d 269, 278 (5th Cir.2001) (citing *Turner,* 914 F.2d at 136). The Trial Court utilized statements by State officials to determine the intent of SB 12. ROA.1248. The Findings of Fact and Conclusions of law are devoid of any reference to any such statements by any Montgomery County policy maker.

Section 3 of SB 12 does not grant the County additional enforcement powers or authority. Section 3 merely creates an additional offense under the Texas Penal Code. Enforcement of Section 43.28 is left to the criminal justice system, the same as any other criminal statute. Neither Woodlands Pride nor the Trial Court identified any Montgomery County policy or County policymaker that adopted or enforced Section 43.28.

---

[4] It is not clear or conceded that the Montgomery County Sheriff is a County policymaker for purposes of SB12 Section 3, and the Court does not need to reach that issue because Woodlands Pride did not raise the issue. *Arnone,* 29 F.4th at 266-67 (citing *McMillian v. Monroe County,* 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed. 2d 1 (1997) and *Daves,* 22 F.4th at 535-38) (explaining that the Sheriff is sometimes a state policymaker).

D. **Summary**:

Woodlands Pride did not produce any evidence suggesting the existence of a Montgomery County Policy maker responsible for an official Montgomery County policy that this the moving force of a Constitutional violation.   The Trial Court did not make a finding or conclusion related to the *Monell* elements.   As explained in *Jett,* "the trial judge must identify those officials who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Jett.,* 491 U.S. at 737.  Instead, the Trial Court relied on "Montgomery law enforcement" to impute liability on Montgomery County without identifying a county policymaker or policy under *Monell*.  ROA.1267.

Because this Court reviews this legal issue *de novo*, and because the answer is clear as a matter of law, Montgomery County requests this Court to reverse and render in its favor.

<u>Issue 2</u>:       ***Woodlands Pride does not have standing to sue Montgomery County because there is not a ripe case or controversy.***

Woodlands Pride sued Montgomery County alleging it is "statutorily tasked with enforcing SB 12." *See* ROA.25 at ¶ 17.  Woodlands Pride alleged it feared criminal penalties and worried that Montgomery County would restrict a performance.  See *e.g.,* ROA.26 at ¶¶ 74 and 78.  These allegations do not create a ripe case or controversy.

16

A. **Woodlands Pride's claims against Montgomery County are not ripe:**

1. ***Woodlands Pride must establish that all claims against Montgomery County are ripe.***

In determining whether to dismiss a federal declaratory judgment action, the court applies a three-step inquiry: (1) whether the declaratory action is justiciable, a threshold issue; (2) if it has jurisdiction, whether the court has the authority to grant declaratory relief in the present action; and (3) if it has jurisdiction and authority, whether to exercise its broad discretion to decide or dismiss the action. *Sherwin Williams Co. v. Holmes Cty.*, 343 F.3d 383, 387 (5th Cir.2003). If the action is not ripe for adjudication and therefore not justiciable, the court need not reach the second or third steps. *Shields v. Norton*, 289 F.3d 832, 837 (5th Cir. 2002) ("[W]e must not proceed until the issue is ripe—until we have that case or controversy."). Thus, even actions for declaratory relief, which by design permit pre-enforcement review, require the presence of an actual "case" or "controversy." *United Transp. Union*, 205 F.3d 851, 857 (5th Cir.2000); see also *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir.2000) (recognizing that although "applying the ripeness doctrine in the declaratory judgment context presents a unique challenge..., a declaratory judgment action, like any other action, must be ripe in order to be justiciable."); *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544 (5th Cir.2008) ("[A] ripeness inquiry is often required when a party is seeking preenforcement review of a law or regulation.").

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (internal quotation marks omitted). Ripeness has both constitutional and prudential components. *DM Arbor Court, Ltd. v. City of Houston*, 988 F.3d 215, 218 (5th Cir.2021). "Even when constitutional ripeness is satisfied . . . a court may decide not to hear a case for prudential reasons, such as '[p]roblems of prematurity and abstractness.'" *Id.*, at 218 n.1 (quoting *Buckley v. Valeo*, 424 U. S. 1, 14, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976)). Further, just as standing is not dispensed in gross, neither is ripeness. *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 434 n.27 (5th Cir.2021) ("We assess ripeness claim by claim."). "A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Urban Developers LLC v. City of Jackson, Miss.*, 468 F.3d 281, 295 (5th Cir.2006) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 586 (5th Cir.1987)). Further, "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* (quoting *Texas*, 523 U.S. 296 ).

## 2. *Woodlands Pride's claim regarding the potential adoption of SB 12 Section 2 by Montgomery County is not ripe.*

Woodlands Pride's claims are not ripe because Woodlands Prides' damages rest on hypothetical and abstract future events that may not occur. In respect to SB

18

12 Section 2, its claim is more properly characterized as a "pre-adoption" claim, rather than a "pre-enforcement" claim.

Local Government Code Section 243.0031(b) as amended by SB 12 is permissive.  ROA.170.  It does not require Montgomery County to do anything, it merely authorizes action.  Woodlands Pride never explains what mechanism of action it reasonably fears Montgomery County can or will take under Section 2.  Montgomery County has not adopted, and Woodlands Pride did not allege or produce evidence demonstrating, that Montgomery County plans to adopt an ordinance[5] (or any other governing mechanism) under Section 2.  It does not explain why, if in the future Montgomery County created an ordinance, it could not challenge that ordinance (assuming Woodlands Pride found the ordinance offensive).

As described above, Local Government Code Section 243.0031(c) conditionally limits *County* action, not Woodlands Pride's action.  Subsection (c) has no effect upon Woodlands Pride unless and until the County adopts an ordinance, regulation or other permit requirement.  There simply is no controversy between Montgomery County and Woodlands Pride arising from subsection (c)'s limitation

---

[5] Montgomery County references the adoption of an ordinance because that is the basic mechanism used by counties to create rules.  Woodlands Pride neither pled nor proved the existence of any mechanism by which Montgomery County could enforce SB12 Section 2.

on the County's authority to pass an ordinance or regulation that the County has taken no steps to implement.

The Trial Court correctly determined that Section 2 only gave counties the "ability" to regulate.  ROA.1263.  The Trial Court erred in finding ripeness in light of the permissive nature of Subsection (b) and the inapplicability of Subsection (c).

### 3. *Summary.*

Woodlands Pride failed to allege or provide any evidence suggesting any credible threat of adoption of any ordinance allowed by Section 2.  Accordingly, neither the Trial Court nor this Court have jurisdiction over the claims against Montgomery County brought pursuant to SB 12 Section 2.

## B. Woodlands Pride Lacks Article III Standing because there is not a case or controversy between it and Montgomery County.

### 1. *Woodlands Pride must establish standing for each claim.*

The subject-matter jurisdiction of federal courts is limited to "Cases" and "Controversies." U.S. CONST. art. III, § 2.  "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).  To establish standing, the plaintiff must show "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Daves*, 22 F.4th at 541–42 (quoting *Thole v. U.S.*

*Bank N.A.*, 140 S. Ct. 1615, 1618 (2020).  Specifically, Plaintiffs "must demonstrate 'personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Id., at* 542 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006)).  "A Plaintff "bears the burden of establishing these elements.'" *Id.,* (quoting *Lujan*, 504 U.S. at 561).  "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Id.* (quoting *Davis v. Federal Elec. Comm'n*, 554 U.S. 724, 734, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008) (internal citation omitted)).

"In pre-enforcement free speech challenges, 'chilled speech or self-censorship is an injury sufficient to confer standing.'" *Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 215-16 (5th Cir.2023) (quoting *Barilla v. City of Houston*, 13 F.4th 427, 431 (5th Cir.2021)).  However, in such a case, each plaintiff must show that: (1) it intends to engage in a course of conduct arguably affected with a constitutional interest; (2) that the course of action is arguably proscribed by statute; and (3) that there exists a credible threat of prosecution under the statute. *Id.* (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014)).  Even if the Court assumes Woodlands Pride meets the first two elements, Woodlands Pride did not establish a credible threat of prosecution by Montgomery County.

Woodlands Pride attempted to allege two potential sources of injury that could be caused by Montgomery County: (1) denial of a law enforcement contract, and (2) denial of a permit application.  Mr. Rocha's testimony proved neither create an actual injury or controversy.

### 2. *Woodlands Pride did not have or need a law enforcement contract with Montgomery County.*

Mr. Rocha initially testified that Woodlands Pride contracts through Montgomery County for its festival security.  ROA.1514. ln. 15-20.  He later admitted Woodlands Pride did not have a security contract with Montgomery County, but rather with off-duty officers (ROA.1556. ln. 22-24); is not required to hire off-duty officers and can hire private security (ROA.1556. ln. 25 - ROA.1557. ln. 2); and submits its security plan to the Woodlands Township, not Montgomery County (ROA.1533. at ln. 3-6).

The Trial Court erred by ignoring the testimony, and relying on Woodlands Pride's plan to hire off-duty officers.  ROA.1250.  Woodlands Pride did not provide any evidence suggesting private security would cost more, that it would not be able to find enough private security officers, or that it would suffer any harm if it chose to hire private security instead of off-duty officers.

### 3. *Permit application.*

Mr. Rocha attempted to create a controversy with Montgomery County by alleging fear of permit denial.  Like the alleged law enforcement contract, it became

apparent on cross-examination that there is not a controversy between Woodlands Pride and Montgomery County because Montgomery does not issue permits which might be required for Woodlands Pride's scheduled or contemplated events.  See *Issue 1 A., supra.*

In its final attempt to establish the need for a permit from Montgomery County, Woodlands Pride relied on completely speculative and abstract testimony about a possible future event.  Woodlands Pride is planning to host a gala in the spring of 2024 at an unknown private venue.  ROA.1513. at ln. 1-9.  This will be an "adults only" event.  ROA.1533. at ln. 18-23.  It had not been decided whether the performances at the gala would be appropriate for all ages.  ROA.1540. ln. 22-ROA.1541. ln. 2.  Woodlands Pride has not rented the facility for the gala.  ROA.1543. ln. 5-7.  Adult only events at Private venues and are not subject to SB 12 Section 2.  ROA.170-171. at Sec. 243.0031(b) & (c).

Mr. Rocha alleged he would have to get some type of unidentified permit to keep minors from looking through the windows of the gala venue.  ROA.1530. ln. 5-12.  After further questioning it became clear that his assertion was entirely speculative.  When asked about what County permit he would need to cover windows on private property, Mr. Rocha testified he was referring to closing down a road near the Howard Hughes building.  ROA.1553. ln. 19 – ROA.1555. ln. 1.  He did not know how close a county sidewalk was to the venue's windows.  ROA.1555.

ln. 2-4.  He also did not know if the sidewalks belong to the County or Township.
*Id.*, at ln. 5-9.  He did not know how close the nearest county road is to the venue.
*Id.*, at ln. 10-13.  He could not even offer an estimate.  *Id.,* at ln. 14-15.  He
acknowledged there are trees everywhere.  *Id.,* at ln. 16-20.  Trees can obviously
obscure the view of the venue, just as they do a "pizza shop."  *Id.*, at ln. 17-20.  When
asked for details about the parking lot that may be located between the venue and
the county road, Mr. Rocha acknowledge that the venue has not been selected.  *Id.,*
at ln. 21-25.

In short, Woodlands Pride attempted to create a controversy by alleging it may
need an undescribed permit to close a hypothetical road or sidewalk, which may or
may not be owned by the County, near a hypothetical venue which will be an
unknown distance from the hypothetical road or sidewalk, and the venue may or may
not be visible from the hypothetical road or sidewalk due to the abundance of trees
and cars parked in the parking lot.  Because this "conflict" is abstract and purely
hypothetical, it does not confer standing to Woodlands Pride against Montgomery
County.

### 4. *Law enforcement.*

Woodlands Pride's pleadings and the Trial Courts order seem to rely on the
false premise that Ligon is responsible for law enforcement policy in Montgomery
County.  That is not accurate.  *Mowbray,* 274 F.3d at 278 (citing *Turner,* 914 F.2d

at 136).  See also, *Issue 1 B., Issue 2 B. 1, Issue 2 B. 4, and Issue 3 B.*

Where a plaintiff has complained actors of a local government are "acting for the State," then "there is no case or controversy with, and no Article III jurisdiction over," the local government for which such 'state' actors serve.  *Daves,* 22 F.4th at 532.

In this case, when Woodlands Pride is complaining of Brett Ligon in his capacity as District Attorney, they are actually complaining of a state official, not a county official.  Accordingly, they have not asserted sufficient facts to establish Article III jurisdiction over Montgomery County on this issue.

## 5. *Summary*

Overall, Woodlands Pride did not offer any non-speculative facts supporting an irreparable injury that is both great and immediate and that is traceable to Montgomery County.  Accordingly, the Court lacks subject matter jurisdiction to hear Woodlands Pride's claims against Montgomery County.

No threat of enforcement, or any action, by Montgomery County has chilled any planned speech or expression by Woodlands Pride on public property over which Montgomery County has any power or legal authority to control.

Woodlands Pride failed to allege or put on and evidence suggesting any credible threat of enactment of an ordinance by Montgomery County.  Accordingly,

neither the Trial Court nor this Court have jurisdiction over the claims against Montgomery County brought pursuant to SB 12 Section 2.

**Issue 3:**     *District Attorney Brett Ligon's general duty to enforce state law does not waive his immunity from Woodlands Pride's pre-enforcement facial challenge to a statute.*

### A. The Trial Court incorrectly determined that general enforcement authority is sufficient to invoke *Ex parte Young* in a pre-enforcement First Amendment case:

Woodlands Pride sued Brett Ligon in his "official capacity as District Attorney of Montgomery County." ROA.23. Its claims were brought pursuant to 42 U.S.C. § 1983. ROA.22., ROA.58 – 60. This is a misnomer, Brett Ligon is the elected District Attorney for 9th Judicial District of Texas, he is elected by the voters of Montgomery County. TEX. GOV'T. CODE § 43.105.

Ligon argued that his immunity was not waived by *Ex parte Young* because he had not taken an affirmative step (ROA.652.) and that "general jurisdiction to enforce criminal laws" and "mere status as [an] elected prosecutor, without more" was insufficient to waive immunity (ROA.653.).

The Trial Court found that Ligon, along with Paxton, Hicks, Gonzalez, and Garza, had "specific enforcement responsibilities under SB 12." ROA.1263 – 64. The Trial Court relied on *Nat'l Press Photographers Ass'n v. McCraw,* 504 F. Supp. 3d 568, 583 (W.D. Tex.2020) (Pittman, J.) for his conclusion that a "district attorney's duty to enforce state law [is] sufficient to satisfy *Ex parte Young*."

26

ROA.1264.  The Court further found it significant that Ligon did not present "any 'compelling contrary evidence' that [he] will not enforce the statute that facially restricts expressive activity by Woodlands Pride…".  ROA.1267.

The Fifth Circuit recently overturned *McCraw* on the issue of whether the mere duty to enforce state law is sufficient to satisfy *Ex parte Young's* exception to sovereign immunity.  *Nat'l Press Photographers Ass'n v. McCraw,* 84 F.4th 632, 647-48 (5th Cir.2023).  The Court relied on *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020)*,* (quoting *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir.2019), the same cases cited by Ligon in his motion to dismiss.  *McCraw,* 84 F.4th at 648 & n. 66, and ROA.651-52.

**B. <u>Montgomery County District Attorney Brett Ligon is a State official:</u>**

*McCraw* seems to create an issue about Ligon's status as a state official.  First, the Court quoted *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 736, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980) for the premise "that prosecutors are 'natural targets for § 1983 injunctive suites since they are the **state officers** who are threatening to enforce and who are enforcing the law.'" *McCraw*, 84 F.4th at 647 & n. 55 (emphasis added).  Then, after determining that *Ex parte Young* does not waive immunity for Texas Department of Public Safety Director McCraw and Highway Patrol Chief Mathis, the Court held that the Hays County District Attorney is not a state official and thus not entitled to sovereign immunity. *Id*., at 648.

27

*McCraw* relied on the *Hudson v. City of New Orleans,* 174 F.3d 67, 682 (5th Cir.1999) to support its conclusion that the Hays County District Attorney is not a state official.   *McCraw*, 84 F.4th at 648, n. 68.   *Hudson,* in determining whether Eleventh Amendment immunity applied to Louisiana District Attorneys, analyzed how *Crane v. Texas,* 766 F.2d 193 (5th Cir.1985) determined that Texas district attorneys were county, not state officials.   *Hudson,* 174 F.3d at 682.

This Circuit explained that the analysis for purposes of Section 1983 liability and Eleventh Amendment immunity[6] are not the same.   *Daves,* 22 F.4th at 533-34. In 1983 lawsuits, the Court looks to the officer's function.   *Id.*, at 534.   This Court held that *Hudson* was not relevant to the determination of "whether an official was acting for a state or a local government" in a 1983 suit.   *Id*.

A few months later, this Circuit recognized that "*McMillian* and *Daves* were decided after *Crane* and both decisions undermine it."   *Arnone,* 29 F.4th at 271-272. The Court did recognized the concern of whether *Crane* applied in the Eleventh Amendment context, considering the holding in *Daves*.   *Id.*, at 272.

This Circuit stated that "Texas law makes clear [] that when acting in the

---

[6] The Courts seem to use sovereign immunity and Eleventh Amendment immunity interchangeably at times.   See *Daves,* 22 F.4th at n. 3 (referring to "state sovereign immunity under the Eleventh Amendment"), and *Alden v. Maine,* 527 U.S. 706, 713, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) ("We have [] sometimes referred to the States' immunity from suit as 'Eleventh Amendment immunity.'   The phrase is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment.").

prosecutorial capacity to enforce state penal law, a district attorney is an agent of the state…" *Esteves v. Brock,* 106 F.3d 674, 678 (5th Cir.1997). "In *Echols v. Parker* we found that a Texas district attorney is a state official when instituting criminal proceedings to enforce state law." *Id.* (citing *Echols v. Parker,* 909 F.2d 795, 801 (5th Cir.1990)). This Circuit reconciled *Crane* in light of *Esteves,*

> based on the different function that the district attorney was performing in *Crane* (setting county policy for the authorization of misdemeanor warrants) as opposed to *Esteves* (enforcing Texas criminal law by prosecution). Thus, Texas district attorneys are shielded by Eleventh Amendment immunity for acts performed as state officers in the scope of criminal prosecution, but they are not so shielded when they act with respect to local policies.

*Spikes v. Phelps,* 131 Fed.Appx. 47, n. 2 (5th Cir.2005) (not published).

In 2009, this Court held that a Texas District Attorney is entitled to Eleventh Amendment immunity and characterized Crane as "holding that Texas district attorney acted as county official in setting county policy for authorization of misdemeanor warrants". *Quinn v. Roach,* 326 Fed.App. 280, 292-93 (5th Cir.2009) (unpublished).

Woodlands Pride brought this case against Ligon[7] in his official capacity as a District Attorney pursuant to Section 1983 because he is responsible for criminal prosecutions in Montgomery County.[8]     ROA.22., ROA.25., ROA.58-60.

---

[7] The County Attorney's representation of Ligon does not provide any support for him being a county officer because the County Attorney is authorized to represent the State in all civil matters pending before any court. TEX. GOV'T CODE § 45.270.

[8] Geographical limitation to Montgomery County is insufficient to support finding that Ligon is a

Woodlands Pride does not allege that Ligon created or set a county policy in the same manner as the DA in *Crane*. The only allegation against Ligon is that he is a District Attorney authorized to prosecute acts that are criminalized in Section 3 of SB 12, *i.e.* 43.28 of the Texas Penal Code. Woodlands Pride "fears exposing itself, its volunteers, and its performers to criminal liability if SB 12 is not enjoined." ROA.45.

SB 12 Section 3 is the only section relevant to Ligon, as he only has criminal authority. TEX. GOV'T CODE § 43.105.

Because the claims against Ligon are brought as a Section 1983 case based on institution of criminal prosecution, Ligon is being sued as a state official.

### C. <u>As a State Official, Brett Ligon is entitled to sovereign immunity</u>:

As State of Texas official, Brett Ligon is generally entitled to Sovereign immunity from suit. Sovereign immunity generally precludes suits against state officials in their official capacities. *E.g.*, *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020) (hereinafter "Tex. Democratic Party I"). Unless waived by the state, abrogated by Congress, or an exception applies, the immunity precludes suit. *Tex. Democratic Party*, 978 F.3d at 179 (hereinafter "Tex. Democratic Party II").

---

County Official. *Arnone,* 29 F.4th at 270. It should also be noted that Ligon is the District Attorney of the 9th Judicial District, whose boundaries coincide with Montgomery County. TEX. GOV'T CODE § 43.105.

There is no allegation that the State waived Brett Ligon's sovereign immunity, or that Congress has abrogated immunity from these claims.

**D. The *Ex parte Young* exception to sovereign immunity does not apply in this case:**

In *Ex parte Young*, the United States Supreme Court recognized that sovereign immunity does not bar "suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004). Under *Ex parte Young*, "individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action." *Ex parte Young*, 209 U.S. 123, 155-56, 28 S.Ct. 441, 52 L.Ed. 714 (1908). It is "a legal fiction that allows private parties to bring suits for injunctive or declaratory relief against individual state officials acting in violation of federal law." *City of Austin*, 943 F.3d at 997. "For the exception to apply, the state official, 'by virtue of his office,' must have 'some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party.'" *Id.* (quoting *Young*, 209 U.S. at 157) see also *Air Evac EMS, Inc. v. Tex. Dep't of Ins.*, 851 F.3d 507, 517 (5th Cir.2017) (quoting *Ex parte Young*, 209 U.S.

at 157).  A mere connection by statute or otherwise to a law's potential enforcement is not sufficient.  The state official "must have taken some step to enforce" the statute.  *Tex. Democratic Party I,* 961 F.3d at 401 (emphasis added).

The Fifth Circuit recognized "guideposts" in applying *Ex parte Young*.  Specifically, the Fifth Circuit reemphasized that "enforcement" includes a showing of "compulsion or constraint."  *Texas All. for Retired Americans. v. Scott*, 28 F4th 669, 672 (5th Cir.2022) (citing *City of Austin*, 943 F.3d  at 1000), see also, *McCraw,* 84 F.4th at 647 (citing *Scott,* 28 F4th at 672).  A merely hypothetical or theoretical connection is not enough; the complaint must allege an ongoing violation of federal law and seek relief properly characterized as prospective.  *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 646, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002).  To fit within the *Ex parte Young* exception to state sovereign immunity, it is not enough to allege that the defendant official has a "general duty to see that the laws of the state are implemented."  *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir.2014).

The Fifth Circuit has repeatedly held that this requires a plaintiff to plead and sufficiently demonstrate that the state official took some "affirmative action" regarding enforcement of the challenged statute, such that the official has "a demonstrated willingness to enforce that duty." See *Tex. Democratic Party I,* 961 F.3d at 400 ("some step" and "affirmative action"); *Morris*, 739 F.3d at 746 ("demonstrated willingness"); *Tex. Democratic Party II*, 978 F.3d at 179 (same).

This Circuit's recent opinion on the issue of whether the mere duty to enforce state law is sufficient to satisfy *Ex parte Young's* exception to sovereign immunity confirms that Ligon's immunity is not waived in this case. *McCraw,* 84 F.4th at 647-48. Just as in *McCraw*, Woodlands Pride did not provide evidence of "a scintilla of enforcement" by Ligon. *Id.*, at 648.

### E. <u>Summary</u>:

Because Brett Ligon in his official capacity as District Attorney of the 9th Judicial District of Texas is a state official for the purposes of enforcing criminal law, he is entitled to sovereign immunity. Even under the relaxed standard of pre-enforcement First Amendment cases, Woodlands Pride was required to provide some evidence of enforcement in order to invoke *Ex Parte Young's* exception for injunctive relief to Ligon's immunity.

<u>Issue 4</u>:     ***Claims against Montgomery County and Brett Ligon in his official capacity as District Attorney are mooted by any relief granted against The Attorney General.***

All claims against Montgomery County and Ligon are based on a facial challenge of a law that never went into effect. The law was set to go into effect on September 1, 2023 (ROA.1241.), but the Trial Court issued a Temporary Restraining Order prior to that date (ROA.960.). The TRO prevented enforcement of SB 12. ROA.963. Before the expiration of the extended TRO (ROA.1186.), the Trial Court issued a permanent injunction to the same effect (ROA.1295.).

If this Court finds SB 12 unconstitutional, and enjoins the Texas Attorney General Attorney from enforcing its provisions, that ruling will bind all state and local governmental actors commanded or authorized to act under it.  *Harris County v. Carmax Auto Superstores Inc.,* 177 F.3d 306, 318 (5th Cir.1999) (recognizing that "a local law enforcement official is bound when his interests are represented by the state attorney general") (internal citations omitted).  The Sixth Circuit held similarly by affirming the mootness of a claim against a county in facial challenge to state law, noting that "to the extent that Plaintiffs are asserting a facial challenge to [Michigan law requiring filing fees by indigent inmates], "every county in Michigan need not be named."  *Coleman v. Caruso*, 413 Fed. Appx. 866, 872 (6th Cir.2011) (unpublished) (Quoting *Coleman v. Granholm,* No. 06-12485, 2007 WL 2461695, *2 (E.D. Mich. Aug. 27, 2007)).

The Trial Court recognized that the claims against the all Defendants except for Paxton might become moot.  ROA.1264 at n. 80.

Considering Woodlands Pride is challenging a State statute that neither Montgomery County nor Ligon were involved in drafting, and that the Attorney General is a party to this suit, there is no need to keep Montgomery County or Ligon in this suit because any ruling declaring the statute unconstitutional will be binding on both.  Allowing this suit to continue against Montgomery County and Ligon causes expenditure of local resource to defend a case that is for all intents and

purposes moot against them.

## CONCLUSION

Appellees Montgomery County and Brett Ligon in his official capacity as District Attorney requests this Court reverse the District Court's finding of jurisdiction, standing, and ripeness against them, reverse the District Court's finding of Monell liability against Montgomery County, render an opinion in their favor dismissing this case with prejudice, award them costs, the amount of which to be determined by the District Court, and for all other relief in equity or law to which Appellee may be entitled.

Respectfully submitted,

__s/ Daniel Plake_____
Daniel Plake
SBN: 24062942
FED ID No.:918023
501 N. Thompson, Ste. 300
Conroe, Texas 77301
Tel: (936) 539-7828
Fax: (936) 760-6920
Daniel.plake@mctx.org

**ATTORNEY FOR APPELLEES,
Montgomery County and Brett Ligon in
his official capacity as District Attorney**

## CERTIFICATE OF SERVICE

I, Daniel Plake, certify that today, January 9, 2024 a copy of the brief of Appellants, Montgomery County, Texas and Brett Ligon in his official capacity as

District Attorney was served upon the following *via* the Court's EM/ECF system:

| | |
|---|---|
| Mr. Ramon Gustave Viada, III<br>Viada & Strayer<br>17 Swallow Tail Court<br>Suite 100<br>The Woodlands, TX 77381<br>*Attorney for Appellant City of Abilene* | William F. Cole<br>Assistant Solicitor General<br>Office of the Attorney General<br>P.O. Box 12548 (MC 059)<br>Austin, Texas 78711-2548<br>*Attorney for Appellant Attorney General Paxton* |
| Mr. Robert Burgess Wagstaff<br>McMahon Surovik Suttle, P.C.<br>400 Pine Street<br>Suite 800<br>Abilene, TX 79601<br>*Attorney for Appellants Taylor County and James Hick in his official capacity as District Attorney* | Brian Klosterboer<br>Chloe Kempf<br>Thomas Buser-Clancy<br>Edgar Saldivar<br>Adriana Pinon<br>ACLU Foundation of Texas, INc.<br>P.O. Box 8306<br>Houston, Texas 77288<br>*Attorneys for Appellees* |
| Derek R. McDonald<br>Maddy R. Dwertman<br>Katie Jeffress<br>Baker Botts L.L.P.<br>401 South 1st Street, Suite 1300<br>Austin, Texas 78704<br>*Attorneys for Appellees* | Brandt Thomas Roessler<br>Baker Botts L.L.P.<br>30 Rockefeller Plaza<br>New York, NY 10112<br>*Attorney for Appellees* |
| Emily Rohles<br>Baker Botts L.L.P.<br>910 Louisiana Street<br>Houston, Texas 77002<br>*Attorney for Appellees* | |

s/ Daniel Plake

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of the Federal Rule of Appellate Procedure 32(a)(7) and 5TH Circuit Rule 32.3 because the brief contains 7,967 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B). This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point, Times New Roman font.

s/ Daniel Plake