No. 23-20480

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

The Woodlands Pride, Incorporated; Abilene Pride Alliance; Extragrams,
L.L.C.; 360 Queen Entertainment, L.L.C.; Brigitte Bandit,

Plaintiffs - Appellees,

v.

Warren Kenneth Paxton, in an official capacity as Attorney General of Texas;
Brett Ligon, in an official capacity as District Attorney of
Montgomery County; Montgomery County, Texas; James Hicks,
in an official capacity as District Attorney of Taylor County;
Taylor County, Texas; City of Abilene, Texas,

Defendants - Appellants.

---

On Appeal from United States District Court
for the Southern District of Texas
C.A. No. 4:23-CV-2847

---

BRIEF OF APPELLANT CITY OF ABILENE, TEXAS

---

Ramon G. Viada III
Viada & Strayer
17 Swallow Tail Court
The Woodlands, Texas 77381
(281) 419-6338
rayviada@viadastrayer.com

ATTORNEY FOR APPELLANT
CITY OF ABILENE, TEXAS

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons and entities, as described in Fifth Circuit Local Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Plaintiffs-Appellees | Counsel for Plaintiffs-Appellees |
|---|---|
| The Woodlands Pride, Incorporated | Brian Klosterboer<br>Chloe Kempf<br>Thomas Buser-Clancy |
| Abilene Pride Alliance | Edgar Saldivar<br>Adriana Pinon |
| Extragrams, L.L.C. | ACLU FOUNDATION OF TEXAS, INC.<br>Houston, Texas |
| 360 Queen Entertainment, L.L.C. | Katherine Jeffress<br>BAKER BOTTS L.L.P. |
| Brigitte Bandit | Houston, Texas |
| | Derek R. McDonald<br>Maddy Dwertman<br>BAKER BOTTS L.L.P.<br>Austin, Texas |
| | Brandt Thomas Roessler<br>BAKER BOTTS L.L.P.<br>New York, New York |

ii

| Defendants-Appellants | Counsel for Defendants-Appellants |
|---|---|
| Warren Kenneth Paxton, in an official capacity as Attorney General of Texas | William Francis Cole<br>Lanora Christine Pettit<br>Taylor K. Gifford<br>OFFICE OF THE TEXAS ATTORNEY GENERAL<br>Austin, Texas |
| Brett Ligon, in an official capacity as District Attorney of Montgomery County<br><br>Montgomery County, Texas | Daniel Dale Plake<br>COUNTY ATTORNEY'S OFFICE FOR THE COUNTY OF MONTGOMERY<br>Conroe, Texas |
| James Hicks, in an official capacity as District Attorney of Taylor County<br><br>Taylor County, Texas | Robert Burgess Wagstaff<br>MCMAHON SUROVIK SUTTLE, P.C.<br>Abilene, Texas |
| City of Abilene, Texas | Ramon Gustave Viada III<br>VIADA & STRAYER<br>The Woodlands, Texas |

  /s/ *Ramón G. Viada III*
   Ramón G. Viada III

## STATEMENT REGARDING ORAL ARGUMENT

This is an appeal from a permanent injunction prohibiting the City of Abilene from enforcing a Texas statute, S.B. 12, which the district court declared unconstitutional. The legal issues for the City – indeed for all local governments – are significant: Are cities proper parties to a pre-enforcement facial challenge to a state law claimed to chill free speech? Does it matter for purpose of establishing municipal liability under 42 U.S.C. § 1983, that the State Legislature that passed the allegedly offending statute is not the City's final policymaker; nor is the state law a municipal policy, but rather, a state policy?

The City requests oral argument to enable counsel to identify and clarify issues for the Court that the briefing may leave unexplained and to answer questions the Court may have about the contents of the record.

## TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PARTIES . . . . . . . . . . . . . . . . . . . ii

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . iv

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . xiv

I.     STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

       A.    Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

       B.    Procedural Background. . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.   SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

       A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

       B.    Lack of Justiciable Controversy with the City. . . . . . . . . . 17

             1.    Standing, Generally . . . . . . . . . . . . . . . . . . . . . . . . . . 17

             2.    No 'Standing in Gross' Among Defendants. . . . . . . . . 18

             3.    No 'Standing in Gross' Among Plaintiffs. . . . . . . . . . . 24

   4. <u>No Standing Under *Luhan* Elements</u> . . . . . . . . . . . . . [24](#)

    a. *S.B. 12, Section 1*. . . . . . . . . . . . . . . . . . . . . . . [25](#)

    b. *S.B. 12, Section 2*. . . . . . . . . . . . . . . . . . . . . . . [25](#)

    c. *S.B. 12, Section 3*. . . . . . . . . . . . . . . . . . . . . . . [29](#)

   5. <u>Mootness</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [30](#)

  C. No Evidence to Support Section 1983 Municipal Liability
  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [34](#)

  D. Abuse of Discretion in Deferring Ruling on City's
  Attorneys' Fee Liability. . . . . . . . . . . . . . . . . . . . . . . . . [43](#)

V. CONCLUSION & PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [45](#)

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [46](#)

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . [47](#)

# TABLE OF AUTHORITIES

<u>Cases</u>                                                          <u>Page(s)</u>

*Alvarez v. City of Brownsville*,
    904 F.3d 382 (5th Cir. 2018) (en banc) . . . . . . . . . . . . . . . . . . . . . . 35

*Arnone v. Dallas Cnty.*,
    29 F.4th 262 (5th Cir. 2022) . . . . . . . . . . . . . . . . . . . . 23, 35, 36, 38

*Bates v. State Bar of Arizona*,
    433 U.S. 350 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*BCCA Appeal Grp., Inc. v. City of Houston*,
    496 S.W.3d 1 (Tex. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bigford v. Taylor*,
    834 F.2d 1213 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . 22, 37, 38

*Bolton v. City of Dallas*,
    541 F.3d 545 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Brownlee v. Lear Siegler Management Servs. Corp.*,
    15 F.3d 976 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Budinich v. Becton Dickinson & Co.*,
    486 U. S. 196 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiv

*Buffin v. California*,
    23 F.4th 951 (9th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 44

*Buquer v. City of Indianapolis*,
    No. 1:11-cv-708-SEB, 2013 U.S. Dist. LEXIS 45084,
    2013 WL 1332158 (S.D. Ind. Mar. 28, 2013) . . . . . . . . . . . . . . . . 31

*City of Austin v. Paxton*,
    943 F.3d 993 (5th Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*City of Erie v. Pap's A.M.*,
    529 U.S. 277 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*City of Monterey v. Del Monte Dunes*,
    526 U.S. 687 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*City of St. Louis v. Praprotnik*,
    485 U.S. 112 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Coleman v. Houston Indep. Sch. Dist.*,
    113 F.3d 528 (5th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Colonial Penn Ins. v. Market Planners Ins. Agency*,
    157 F.3d 1032 (5th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Connick v. Thompson*,
    563 U.S. 51 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Cooper v. Dillon*,
    403 F.3d 1208 (11th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . 41, 42

*Crane v. Texas*,
    759 F.2d 412 (5th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Daves v. Dallas Cnty.*,
    22 F.4th 522 (5th Cir. 2022) (en banc). . . . . . . . . . 19, 22, 23, 36, 38

*eBay Inc. v. MercExch., LLC*,
    547 U.S. 388 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Echols v. Parker*,
909 F.2d 795 (5th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . 22, 38, 44

*Evers v. County of Custer*,
745 F.2d 1196 (9th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . 41, 42

*Ex parte Young*,
209 U.S. 123 (1908). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23

*Familias Unidas v. Briscoe*,
619 F.2d 391 (5th Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . 22, 37, 44

*Fontenot v. McCraw*,
777 F.3d 741 (5th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . 19, 24

*Garner v. Memphis Police Dep't*,
8 F.3d 358 (6th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 42

*Groden v. City of Dallas*,
826 F.3d 280 (5th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Guzman v. Hacienda Records & Recording Studio, Inc.*,
808 F.3d 1031, 1036 (5th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . 16

*Harris County v. Carmax Auto Superstores Inc.*,
177 F.3d 306 (5th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

*Herbst v. Ryan*,
90 F.3d 1300 (7th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*In re Waller Creek, Ltd.*,
867 F.2d 228 (5th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Jones v. City of Port Arthur*,
No. 09-14-00442, 2016 Tex. App. LEXIS 12357
(Tex. App.—Beaumont 2016, no pet.) (mem. op.) . . . . . . . . . . . . . 29

ix

*Kentucky v. Graham*,
    473 U.S. 159, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) . . . . . . . . 23

*Lewis v. Casey*,
    518 U.S. 343 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Lewis v. Continental Bank Corp.*,
    494 U.S. 472 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Los Angeles County v. Humphries*,
    562 U.S. 29 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 24

*McMillian v. Monroe Cty.*,
    520 U.S. 781 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 36-38

*Miller v. City of Wickliffe*,
    852 F.3d 497 (6th Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Monell v. New York City Dept. of Social Servs.*,
    436 U.S. 658 (1978). . . . . . . . . . . . . . . . . . . . . . . . . 34, 35, 38-41

*Nixon v. Administrator of Gen. Serv.*,
    433 U.S. 425 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Office of the AG v. Weatherspoon*,
    472 S.W.3d 280 (Tex. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Okpalobi v. Foster*,
    244 F.3d 405 (5th Cir. 2001) (en banc) . . . . . . . . . . . . 17, 18, 25, 30

*Overton v. Austin*,
    748 F.2d 941 (5th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Pembaur v. City of Cincinnati*,
　　475 U.S. 469 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Perez v. Ledesma*,
　　401 U.S. 82 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Peterson v. City of Fort Worth*,
　　588 F.3d 838 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Petrohawk Props., L.P. v. Chesapeake Louisiana, L.P.*,
　　689 F.3d 380 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Police Dep't v. United Reporting Publ'g Corp.*,
　　528 U.S. 32 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Providence Behavioral Health v. Grant Rd. Pub. Util. Dist.*,
　　902 F.3d 448 (5th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Raines v. Byrd*,
　　521 U.S. 811 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Republic Waste Servs. of Tex. v. Tex. Disposal Sys.*,
　　848 F.3d 342 (5th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Robinson v. Hunt Cty.*,
　　921 F.3d 440 (5th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*State ex rel. Rose v. La Porte*,
　　386 S.W.2d 782 (Tex. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Steffel v. Thompson*,
　　415 U.S. 452 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 32

*Surplus Store & Exch., Inc. v. City of Delphi*,
　　928 F.2d 788 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

xi

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [18](#)

*Town of Chester, N.Y. v. Laroe Estates, Inc.,*
    581 U.S. 433 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [18](#)

*Vela v. City of Houston,*
    276 F.3d 659 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [2](#)

*Vives v. City of New York,*
    524 F.3d 346 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . [41](#), [42](#)

*West v. Congemi,*
    28 F. Supp. 2d 385 (E.D. La. 1998) . . . . . . . . . . . . . . . . . . . . . . . . [38](#)

*Western Mining Council v. Watt,*
    643 F.2d 618 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [26](#)

*Younger v. Harris,*
    401 U.S. 37 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [26](#)

## Rules and Statutes

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [xiv](#)

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [xiv](#), [1](#)

42 U.S.C. § 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [1](#)

Fed. R. Civ. P. 52(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [16](#)

Fed. R. Civ. P. 54(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [43](#)

Fed. R. Civ. P. 54(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [44](#)

TEX. CONST., art. I, § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

TEX. CONST., art. II, § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

TEX. CONST., art. XI, § 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 42

TEX. CODE CRIM. PROC. art. 2.12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

TEX. CODE CRIM. PROC. art. 2.13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## JURISDICTIONAL STATEMENT

Plaintiffs sued the City for declaratory and injunctive relief under 42 U.S.C. § 1983. The district court thus had federal question subject-matter jurisdiction over these claims. *See* 28 U.S.C. § 1331. The court entered a declaratory judgment and permanent injunction on September 26, 2023.[1] On October 23, 2023, the district court reserved its ruling on the City's liability for attorneys' fees pending the outcome on appeal. The City filed its notice of appeal on October 26, 2023.[2] The Court of Appeals has jurisdiction over this appeal under 28 U.S.C. § 1291. *See also Budinich v. Becton Dickinson & Co.*, 486 U. S. 196 (1988) (holding that a decision on the merits is a "final decision" under §1291 even if the award or amount of attorney's fees for the litigation remains to be determined).

---

[1] ROA.1240-95.

[2] ROA.1909.

BRIEF OF APPELLANT CITY OF ABILENE, TEXAS

I.    STATEMENT OF THE ISSUES.

    1.    Whether Plaintiffs established a justiciable "Case or Controversy" against the City, despite the fact that the City has never sought to regulate their activities under S.B. 12 and has maintained strict neutrality on the constitutionality of S.B. 12 throughout this litigation.

    2.    Whether the judgment against the Texas Attorney General as to the constitutionality of S.B. 12 rendered moot Plaintiffs' claims against the City for injunctive and declaratory relief.

    3.    Whether Plaintiffs failed to demonstrate a meritorious claim against the City under 42 U.S.C. § 1983, given that S.B. 12, a state statute, is not alleged to be, or is, an official city policy of the City's final policymaker.

    4.    Whether the District Court abused its discretion in deferring its ruling on the City's liability for an attorney fee award 42 U.S.C. § 1988, given that regardless of the outcome of this appeal on the merits, the City cannot be liable for attorneys' fees on these facts and, thus, a remand for a determination of that issue will likely result in piecemeal appeals in this case.

II.   STATEMENT OF THE CASE.

    A.    Factual Background.

The City of Abilene (the "City") is a Texas home-rule municipality operating under a city charter. *See* ABILENE CITY CHARTER.[3] The City's

---

[3] A certified copy of the Charter was attached to, and referenced by the City's motion to dismiss. ROA.473-524. The City requests the Court to

governing body and final policymaker is its elected City Council. *Id.*, at

Art. II, Sec. 10 ("All powers and authority, *including determination of all*

*matters of policy*, which are expressly or by implication conferred on or

possessed by the city shall be vested in and exercised by the council. . . .")

(emphasis added).

Plaintiffs are a group of individuals and organizations that have

facially challenged the constitutionality of Texas Senate Bill 12 (S.B. 12).

S.B. 12 is a Texas state statute, not a city ordinance. No city law is

challenged in this case. The basis for Plaintiffs' suit against the City of

Abilene and other local governments collectively is the assertion that

"Defendants [including the City] are sued because they are *statutorily*

*tasked* with enforcing this unconstitutional law." Complt., at ¶ 2 (emphasis

added)[4]; *see id.*, at ¶ 19.[5]

---

take judicial notice of the Charter. *See, e.g.*, *Overton v. Austin*, 748 F.2d
941, 955 (5th Cir. 1984) (judicial notice of city charter); *In re Waller Creek,
Ltd.*, 867 F.2d 228, 238 n.14 (5th Cir. 1989) (city ordinance judicially
noticed); *Vela v. City of Houston*, 276 F.3d 659, 682 n.26 (5th Cir.
2001)("This court has stated that it is appropriate for us to take judicial
notice of a city ordinance on appeal even if it was not introduced into the
trial records.") (citing *In re Waller Creek*).

[4] ROA.21.

[5] ROA.25.

2

S.B. 12[6] has three main parts.

Section 1 adds Chapter 769 to the Texas Health & Safety Code, to prohibit certain sexually oriented performances on the premises of a "commercial enterprise." It provides for a civil penalty which the Texas Attorney General may enforce. *Id.* The City of Abilene has no enforcement powers under Section 1 of S.B. 12.

Section 2 adds Section 243.0031 to the Texas Local Government Code. This provision prohibits cities and counties from allowing a "sexually oriented performance" on public property or in the presence of a minor. *Id.*, at § 243.031(c). This provision also authorizes cities and counties to "regulate" sexually oriented performances under the police power of these entities, but does not mandate that local governments enact any such regulations. *Id.*, at § 243.031(b). No allegation has been made in this case that the City has proposed to enact any new ordinance or regulation pursuant to the regulatory authority delegated by Section 243.031(b).

Section 3 adds Section 43.28 to the Texas Penal Code. It defines a "sexually oriented performance" *id.*, at § 43.28(a)(2), and criminalizes

---

[6] ROA.168-73.

3

"sexually oriented performances" conducted in the presence of a minor or on public property where a minor could reasonably be expected to view the performance. *Id.*, at § 43.28(b), (c).

The only Plaintiff that claims any chilling effect from the potential enforcement of S.B. 12 within the City of Abilene is the Abilene Pride Alliance ("APA"). The allegations on this claim are as follows:

> The Abilene Pride Alliance is currently planning its annual Pride event on September 30, 2023, which will feature a parade through Abilene's public downtown streets and a festival at the Expo Center of Taylor County. The Expo Center of Taylor County is operated by a non-profit organization who rents the facility from Taylor County. *The City of Abilene has issued a permit for the parade.*

Complt., at ¶ 83 (emphasis added).[7]

The italicized allegation confirms that the City has affirmatively permitted the very action that APA feels "chilled" to undertake. Allegedly, Plaintiff APA "fears that, if SB 12 takes effect, its permit for the use of Abilene's city streets may be revoked—with no established due process or recourse—by the City of Abilene." Complt., at ¶ 86.[8]

---

[7] ROA.47.

[8] ROA.48.

4

The District Court, adopting nearly verbatim Plaintiffs' proposed Findings of Fact, ignored undisputed evidence that demonstrates no Article III "Case or Controversy" between these Plaintiffs and the City of Abilene.

The only Plaintiff shown to have any plans whatsoever to host drag-type festivals and activities within the City of Abilene is APA.[9] None of the other four Plaintiffs – The Woodlands Pride, Inc, Extragrams, LLC, 360 Queen Entertainment LLC, or Brigitte Bandit – offered any evidence showing any plan to host or engage in any drag performances, festivals, or related activities within the City.

In September 2022, the City permitted APA to host a street parade that featured drag performers on street floats. In conjunction with that street parade, the City also permitted a Pride Festival featuring drag performances at a City park.[10] APA's street parade and festival were conducted in an age-appropriate manner that did not involve performers

---

[9] ROA.1448-51.

[10] ROA.1452-56.

5

dressing indecently (exposing breasts, buttocks, or genitals) or engaging in simulated sex acts in the presence of children.[11]

The drag performances hosted by APA do involve performers wearing sequins, wigs, breastplates, hip pads, packers (that simulate a penis bulge), and exaggerated jewelry. The performers typically dance, lip synch, and engage with the audience by hugging, kissing on the cheek, sometimes bumping hips.[12] However, no one intentionally makes physical contact with another's breasts except by hugging.[13] The performers' dances do not involve gestures or gesticulations that are sexually-oriented.[14] The packers worn by 'drag-king' performers do not simulate an erect penis.[15]

Before suit was filed, APA had applied for, and the City granted, a permit for APA to host its street parade, then scheduled for September 30, 2023.[16] At trial, APA's representative, Gavyn Hardegree, testified that

---

[11] ROA.1452-56.

[12] ROA.1452-56.

[13] ROA.1465-66.

[14] ROA.1466.

[15] ROA.1468-69.

[16] ROA.1456.

APA's then-planned 2023 parade would be similar in content to its 2022 parade.[17] APA did not plan or propose for its 2023 festival to be conducted on city property.[18]

APA did not plan or intend to engage in the various forms of conduct that Plaintiffs claimed might violate S.B. 12.[19] No proof was offered to show that the City intended to revoke the permit granted to APA to conduct its 2023 street parade, although APA subjectively fears the City might do so. No proof was submitted to show that the City of Abilene believed, or had reason to believe, that the planned parade would violate S.B. 12. As of the date of trial, APA still planned to host its 2023 parade.[20]

No evidence was submitted to show that any threat of prosecution by the City had any chilling effect on any planned speech or expression by APA on public property over which the City has any power or legal authority to control. Hardegree admitted he never "had any hassle from

---

[17] ROA.1457.

[18] ROA.1456.

[19] ROA.1467-76.

[20] ROA.1456.

the municipality."[21] On one occasion, a call was made to police by an unspecified caller during a drag show function hosted by APA.[22] The purpose of the call is unknown.[23] Police responded to the call, asked questions, then left.[24] No arrests were made or charges filed.[25]

Plaintiffs adduced no evidence showing that the City proposes to issue any regulations pursuant to the authority conferred by S.B. 12's new Section 243.0031(b) of the Texas Local Government Code. In this litigation, the City has maintained neutrality on the constitutionality of S.B. 12.

B.    Procedural Background.

S.B. 12 was scheduled to take effect on September 1, 2023.[26] Plaintiffs filed this pre-enforcement facial challenge of S.B. 12 on August

---

[21] ROA.1456.

[22] ROA.1466-67.

[23] ROA.1467.

[24] ROA.1467.

[25] ROA.1467.

[26] *See* S.B. 12, Sec. 5 ROA.172.

2, 2023.[27] Plaintiffs moved for a preliminary injunction on August 9.[28] On August 14, the district court ordered that the preliminary injunction hearing would be consolidated with a trial on the merits, setting the trial for August 28, 2023.[29] On August 18, 2023, court ordered Defendants to file responses to the motion for preliminary injunction by August 23.[30]

On August 21, 2023, the City filed a motion to dismiss for want of subject, or alternatively, for failure to state a claim.[31] On August 22, the City filed its response to the motion for preliminary injunction.[32]

The case was tried to the bench between August 28-29, 2023.[33] Following the close of the evidence, the court issued a temporary injunction enjoining Defendants from enforcing S.B. 12 while the Court

---

[27] ROA.20-64.

[28] ROA.104-228.

[29] ROA.241-42.

[30] ROA.304.

[31] ROA.473-524.

[32] ROA.528-37.

[33] ROA.957, 959.

prepared its findings and conclusions.[34] The City timely submitted its proposed findings of fact and conclusions of law on September 6.[35]

The court entered its findings of fact and conclusions of law on September 26, 2023.[36] The court declared S.B. 12 an unconstitutional restriction on free speech and enjoined all Defendants, including the City, from enforcing it.[37] The court's fact findings and legal conclusions make no determination as to attorney fee liability, although the City, in its proposed findings and conclusions, contended that it should not be held liable for an attorney fee award, even if the court decided to strike down S.B. 12.[38] Following issuance of judgment, the court denied the City's still pending motion to dismiss "as moot."[39]

---

[34] ROA.960-64.

[35] ROA.966-90.

[36] ROA.1224-95.

[37] ROA.1295.

[38] ROA.988-89.

[39] ROA.1328-30.

On October 6, 2023, Plaintiffs moved to extend the time to submit their bill of costs and attorneys fees until after this appeal was decided.[40] On the same day, the City opposed that motion, requesting that the court then decide whether the City could be held liable in a case of this nature for attorneys' fees and costs. The City argued as follows:

> A postponement of a determination of Plaintiffs' right to recover attorneys' fees against the City will not promote judicial economy or economy for the City. Whether the City is liable for Plaintiffs' costs or attorneys' fees, and if so, the financial burden of that liability, will factor into whether the City will appeal the Judgment. If the liability beyond the injunction itself will be granted, the City would want to appeal both rulings in the same appeal. The piecemeal appeal forecast by the Plaintiffs will be assured if the City, without notice of its financial fee liability[,] must first appeal whether Plaintiffs are prevailing parties as to the City and then later appeal any fee award imposed after the initial appeal.[41]

---

[40] ROA.1852-58.

[41] ROA.1860-61.

On October 23, 2023, the court granted Plaintiffs' motion deferring its ruling on the City's liability for costs and attorneys' fees.[42] The City timely appealed on October 26, 2023.[43]

III.    SUMMARY OF ARGUMENT.

S.B. 12 is a Texas state statute, not a city ordinance. Plaintiffs never alleged or showed that the City adopted any ordinance adopting S.B. 12 as an official city policy, and no evidence exists to show the City promulgated, or proposes to promulgate, any city regulation authorized by Section 2 of S.B. 12. No evidence exists to show the City as such has ever threatened to enforce S.B. 12 in a manner that punishes any of the types of activities these Plaintiffs customarily engage in. Indeed, none of the Plaintiffs besides Abilene Pride Alliance plans to host any drag-type entertainment in Abilene; and historically, the City has permitted Abilene Pride Alliance to conduct the activities it wants to continue.

Thus, there is no Article III "Case of Controversy" between Plaintiffs and the City. On the issue of whether S.B. 12 is or is not a valid,

---

[42] ROA.1894-95.

[43] ROA.1909.

constitutional law, the State (through the Texas Attorney General) appeared and defended the validity of the law, while the City at all stages of the litigation has taken a neutral stance on that issue. The City has no legal interest adverse to Plaintiffs on whether S.B. 12 is a valid law. Plaintiffs point to no action of the City's to cause them to self-censor.

Furthermore, to the extent there ever was a live controversy between Plaintiffs' and the City, the district court's judgment against the Attorney General declaring S.B. 12 unconstitutional renders the case against the City moot. Under the doctrine of virtual representation, the judgment against the Texas Attorney General binds all state and local officials who are authorized and directed to act in accordance with S.B. 12 (at least until a superior court says otherwise). The claimed chill from prospective enforcement by the City – if any – thus evaporated when the law was struck down by a federal judgment binding on the State's highest legal representative. There is no basis for assuming that the City of Abilene needs to be ordered not to enforce a state law which the State itself has been forbidden to enforce. There is no need for federal courts striking down

13

state laws to issue separate injunctions to local entities just for good measure.

It is unfortunate that the merits argument cannot precede jurisdiction, because the failure of Plaintiffs' 1983 claim against the City is comparatively simple. To secure declaratory or injunctive relief against a City under Section 1983, a plaintiff must prove that the constitutional injury they claim has resulted from an official city policy promulgated by the City's final policymaker, its City Council. Section 1983 is a tort statute. It allows neither *respondeat superior* nor *respondeat inferior* liability. For a declaratory judgment or injunction to issue against the City, the City itself, through its own policymaker, must be shown to be the tortfeasor.

In its rush to judgment, the district court overlooked the City's merits argument entirely - the City as such committed no constitutional tort. Although the court correctly pointed out that cities are "persons" under Section 1983 and lack the sovereign immunity enjoyed by the State of Texas, the court never answered whether Plaintiffs proved the *prima facie* elements of a *Monell* claim against the City. Whether a city theoretically can be liable under Section 1983 is beside the point. The

policy at issue here is a state statute, not a city ordinance; thus, the requisite element of a city policy is missing. Moreover, the policy is one enacted not by the City's final legislative policymaker but by the State's – its very own Legislature. The District Court plainly erred in disregarding the long line of controlling cases of the Supreme Court, the Fifth Circuit, and every other circuit court to address the issue – local governments are not liable under Section 1983 for state statutory mandates compelling local official action.

The district court also abused its discretion in deferring its decision on whether City is liable for Plaintiffs' attorneys' fees. In cases brought to enjoin local actors from carrying out an unconstitutional state mandate, it is improper to award attorneys' fees against the local government for which those local actors serve. The district court's postponement of its ruling on that question creates a potential for multiple appeals, unless this Court renders the judgment of non-fee liability that the court below should have rendered.

IV.  ARGUMENT.

A.    Standard of Review.

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed *de novo.*" *Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015) (quotation marks and citation omitted); *see also* FED. R. CIV. P. 52(a)(6). "A finding made by the district court 'is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Providence Behavioral Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 455 (5th Cir. 2018) (quoting *Guzman*, *supra*). "Put differently, 'a finding is clearly erroneous if it is without substantial evidence to support it, the court misinterpreted the effect of the evidence, or this court is convinced that the findings are against the preponderance of credible testimony.'" *Id.* (quoting *Petrohawk Props., L.P. v. Chesapeake Louisiana, L.P.*, 689 F.3d 380, 388 (5th Cir. 2012)).

In actions tried upon the facts to a court, "the findings and conclusions must be sufficient in detail and exactness to indicate the factual basis for the ultimate conclusion reached by the court." *Colonial Penn Ins. v. Market Planners Ins. Agency*, 157 F.3d 1032, 1037 (5th Cir. 1998) (internal quotations omitted). This Court reviews "*de novo* whether those findings support a judgment against [the defendant], as that is a legal conclusion." *Id.*

B.     Lack of Justiciable Controversy with the City.

1.     <u>Standing, Generally</u>.

"Under Article III of the Constitution, the federal courts have jurisdiction over a claim between a plaintiff and a defendant only if it presents a 'case or controversy.'" *Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001) (en banc). "This is a 'bedrock requirement.'" *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). To establish a case or controversy sufficient to give a federal court jurisdiction over their claims, Plaintiffs must satisfy three criteria. *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)):

> First, they must show that they have suffered, or are about to suffer, an "injury in fact." Second,

"there must be a causal connection between the injury and the conduct complained of." Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." If any one of these three elements – injury, causation, and redressability – is absent, plaintiffs have no standing in federal court under Article III of the constitution to assert their claim.

*Okpalobi*, 244 F.3d at 425 (quoting *Lujan*, 504 U.S. at 560 (internal citation omitted).

"The party invoking federal jurisdiction bears the burden of establishing standing." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotations omitted). "Each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.* (internal quotations omitted).

### 2.    No 'Standing in Gross' Among Defendants.

Because "standing is not dispensed in gross," *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017), "a plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). To do so, each plaintiff must demonstrate that it has standing separately as to each defendant. *See*

*Daves v. Dallas Cnty.*, 22 F.4th 522, 542 (5th Cir. 2022) (en banc) ("Standing to sue one defendant does not, on its own, confer standing to sue a different defendant."); *Fontenot v. McCraw*, 777 F.3d 741, 746 (5th Cir. 2015) ("The court must evaluate each plaintiff's Article III standing for each claim; 'standing is not dispensed in gross.'")(quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)).

In this pre-enforcement facial challenge to a state statute, it is important to distinguish the separateness of the State of Texas, which enacted S.B. 12, and local officials allegedly charged with enforcing it. Through their Constitution, the sovereign people of Texas have created the "Government of the State of Texas," divided in three distinct departments – legislative, executive, and judicial. TEX. CONST., Preamble; art. I, § 1; art. II, § 2. Through the home-rule amendment to the Texas Constitution, the people of Texas have granted the residents of most Texas cities the power of local self-government through the adoption of a city charter. *Id.*, at art. XI, § 5; *BCCA Appeal Grp., Inc. v. City of Houston*, 496 S.W.3d 1, 7 (Tex. 2016) ("[h]ome-rule cities possess the power of self-government and look

to the Legislature not for grants of authority, but only for limitations on their authority"). As the Texas Supreme Court has declared:

> The governing body of a [Texas home-rule] city is not required to look to the [Texas] Legislature for a grant of power to act. Such power is given by the Constitution. The governing body only looks to acts of the Legislature to ascertain if it has placed any limitations on the power to act as granted by Article XI, Section 5.

*State ex rel. Rose v. La Porte*, 386 S.W.2d 782, 785 (Tex. 1965).

A certified copy of the Abilene City Charter was submitted below in support of the City's motion to dismiss, and the City requests the Court of Appeals to judicially notice the Charter for purposes of this appeal.[44] As a home-rule city, Abilene is not an agency of the Government of the State of Texas. The City was created by the eligible resident voters pursuant to the Home-Rule Amendment, not by the Texas Legislature. The City lacks state-wide jurisdiction. The City as such neither enacts nor enforces the Texas Penal Code. Licensed peace officers authorized by the State Government enforce statutory criminal law. State statutes may limit or

---

[44] ROA.489-524.

curtail municipal authority, but a state statute is not the official policy of the local municipal government.

Here, no claim is made that the City itself threatens to enforce a facially *constitutional* law in an unconstitutional manner, let alone that the City has done so already. Plaintiffs fear that S.B. 12, *if and when effective*, will direct City actors to infringe their constitutional rights, alleging the City "[is] sued because [it is] *statutorily tasked* with enforcing this unconstitutional law [S.B. 12]." Complt., at ¶ 2 (emphasis added)[45]; *see also id.*, at ¶ 19[46]. Plaintiffs contend that once the State adopted S.B. 12, it became a City policy, just as if the City had adopted it.[47] The district court appears to have followed this same reasoning into error.

_____

[45] ROA.21.

[46] ROA.25.

[47] The end-run used by Plaintiffs to skirt the requisites for challenging state legislation under *Ex Parte Young* is palpable. The City became the equivalent of the State Government for purposes of standing, but the City remains a mere municipal subdivision of the State for purposes of Section 1983 "person"-hood, lacking of state sovereign immunity. In this way, a municipality with no interest in the legal controversy over whether a state law is constitutional becomes a sham defendant, joined only for the plaintiff to secure a ruling striking down the law and a deep pocket to absorb the cost of litigation of a controversy not even remotely of the City's making.

State statutes mandating local governmental action are not treated as local mandates. "When a state statute directs the actions of an official, . . . the officer, be he state or local, is acting as a state official." *Echols v. Parker*, 909 F.2d 795, 799 (5th Cir. 1990) (emphasis added); *see also Buffin v. California*, 23 F.4th 951, 962 (9th Cir. 2022) ("any officer, be he state or local, is acting as a state official, i.e., a state agent when a state statutory regime comprehensively directs his actions") (internal quotations omitted) (citing *Echols*, 909 F.2d at 799 (5th Cir. 1990)).

As the City will again argue in the merits section of this brief below, *see* pp. 34-43, Section 1983 local governmental liability cannot be based upon state statutory mandates. *See, e.g.*, *McMillian v. Monroe Cty.*, 520 U.S. 781, 784-85 (1997) (under Section 1983, county official whose duties are imposed by state law does not create liability for the county when he carries out those duties); *Daves v. Dallas Cnty.*, 22 F.4th 522, 545 (5th Cir. 2022) (en banc) ("if there is no defendant county official who acts as a policymaker as to the function at issue, then the County must be dismissed as a party") (citing *McMillian*, 520 U.S. at 783).[48]

---

[48] *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980); *Crane v. Texas*, 759 F.2d 412, 430 (5th Cir. 1985); *Bigford v. Taylor*, 834

On the jurisdictional front, Plaintiffs cannot show they have any justiciable controversy with the City. The City is not a state actor. S.B. 12 is not city policy. It does not direct the City *as such* to prosecute Plaintiffs for sporting 'packers' in the presence of children. There is no city official sued in this case as a "state actor" under *Ex parte Young*. Accordingly, there is no present case or controversy between Plaintiffs and the City *as such*. *Daves*, 22 F.4th at 532 (holding no standing to sue county even though county sheriff could arguably be sued as state actor under *Ex parte Young*).[49]

---

F.2d 1213, 1223 (5th Cir. 1988); *Arnone*, 29 F.4th at 266 (affirming dismissal of county where actions of county official were directed by state law).

[49] Plaintiffs have not sued the City of Abilene under *Ex parte Young*. They have not alleged anything resembling the "requisites" for the *Ex parte Young* to apply to the City. A *Young* suit must be brought against an official in his official capacity, and the plaintiff must show that "the state official, 'by virtue of his office,' must have 'some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party.'" *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (quoting *Ex parte Young*, 209 U.S. 123, 157(1908)); *cf. Kentucky v. Graham*, 473 U.S. 159, 169 (1985). The City *as such* is plainly not an "individual state official." *See Daves*, 22 F.4th at 542 (holding that where district and county judges acted for the State of Texas when they created bail schedules and that such actions could be subject to a claim for prospective relief under *Ex parte Young*, but such officials "cannot create

### 3.    No 'Standing in Gross' Among Plaintiffs.

None of the Plaintiffs except for Abilene Pride Alliance has alleged, or attempted to prove, that the prospective enforcement of S.B. 12 will chill drag performances in the City of Abilene. Nor did the district court make any fact finding of any legally cognizable self-censorship on the part of any of these other Plaintiffs due to fear of enforcement of S.B. 12 by the City of Abilene. Thus, the district court erred in refusing to dismiss for lack of subject-matter jurisdiction all of the claims against the City brought by Woodlands Pride, Extragrams, 360 Queen, or Bandit. *See Fontenot*, 777 F.3d at 746-47.

### 4.    No Standing Under *Luhan* Elements.

The district court's lumping together all of the defendants as one undifferentiated entity for its standing analysis can also be shown to spill over into the court's misapplication of the specific *Luhan* elements *vis a vis* Plaintiffs' suit to enjoin the City from enforcing S.B. 12.

---

liability for Dallas County for those actions").

a.  *S.B. 12, Section 1.*

Section 1 of S.B. 12, which amends the Texas Health and Safety Code to add a new Chapter 769, entitled "Sexually Oriented Performances," does not empower the City or any of its officials to enforce that part of S.B. 12. Section 1 may only be enforced by the Texas Attorney General. Therefore, the City is an improper defendant for the purposes of facially challenging the constitutionality of Section 1 of S.B. 12 and seeking an injunction prohibiting the City's enforcement of that part of the law. *Okpalobi v. Foster*, 244 F.3d 405, 426-27 (5th Cir. 2001) ("Because these defendants have no powers to redress the injuries alleged, the plaintiffs have no case or controversy with these defendants that will permit them to maintain this action in federal court.").

b.  *S.B. 12, Section 2.*

Section 2 of S.B. 12 adds a new Section 243.0031 to the Texas Local Government Code, which both authorizes municipalities to regulate "sexually oriented performances" (*see id.*, § 243.0031(b)), hereinafter, the "Municipal Authorization Provision"); and prohibits municipalities from authorizing such performances on public property or in the presence of

minors (*id.*, at § 243.0031(c), hereinafter, the <u>Municipal De-Authorization Provision</u>").

The City is not a proper party for challenging the facial constitutionality of the Municipal Authorization Provision. As discussed above, the City's powers flow directly from the Texas Constitution through the Abilene City Charter. The City did not crown itself with that power, Napoleon-like. More importantly, no evidence (much less any court finding) establishes that the City of Abilene stands ready to enact any regulation pursuant to the Authorization Provision. No justiciable controversy exists to enjoin the "enforcement" of a regulatory power the City has no demonstrated intention of ever exercising. *See Nixon v. Administrator of Gen. Serv.*, 433 U.S. 425, 438 (1977) ("For [the Court] to review regulations not yet promulgated, the final form of which has been only hinted at, would be wholly novel."); *Western Mining Council v. Watt*, 643 F.2d 618, 627 (9th Cir. 1981) ("The mere possibility that the Secretary may act in an arguably unconstitutional manner pursuant to one or more of [the legislative acts] is insufficient to establish the 'real and substantial controversy' required to render a case justiciable under Article III.");

*Younger v. Harris*, 401 U.S. 37, 42 (1971) ("persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs").

The injunction prohibiting the City from "enforcing" S.B. 12's Municipal De-Authorization Provision, is also misdirected and nonsensical. As already discussed, it is the Government of the State of Texas – to wit, its Legislative branch – that has *prohibited* Texas municipalities from *permitting* "sexually oriented activities" in certain contexts. This portion of S.B. 12 does not command the City to punish, prosecute, or sanction "sexually oriented performances." It merely prohibits cities from permitting certain activities in public places. Under the Home Rule Amendment of the Texas Constitution, a city has no power to nullify or repudiate a state statute, particularly one that limits municipal power. *See generally Republic Waste Servs. of Tex. v. Tex. Disposal Sys.*, 848 F.3d 342, 346 (5th Cir. 2016) (discussing statutory abrogation of home-rule municipal authority). Thus, any claimed "chill" from S.B. 12's limitation on municipal power is traceable to the state law itself, not to the disability imposed by law on the municipality's powers.

The evidence established that the City has not denied any permit to any of these Plaintiffs to engage in their planned activities. Instead, as of the time of trial, the City had already granted Abilene Pride Alliance a permit to host its parade; and no evidence was adduced to show that the City threatened to revoke the permit when S.B. 12 took effect. APA did not show it modified its permit application in fear of the new law criminalizing the performances that the City had customarily allowed. No evidence exists to show how the mere act of applying for a parade permit in the future can or will result in self-censorship. *See Miller v. City of Wickliffe*, 852 F.3d 497, 506 (6th Cir. 2017) ("merely applying for a license, as opposed to engaging in some allegedly protected conduct and fearfully waiting for potential prosecution, does not carry the same risk that is normally seen in facial-challenge cases"); *Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 41 (1999) ("Resort to a facial challenge here is not warranted because there is 'no possibility that protected speech will be muted.'") (quoting *Bates v. State Bar of Arizona*, 433 U.S. 350, 380 (1977)).

c.   *S.B. 12, Section 3.*

Section 3 of S.B. 12 amends the Texas Penal Code by creating a new Section 43.28 to the Code. The City *as such* is not an enforcement authority under the Texas Penal Code or the Texas Code of Criminal Procedure. *See generally*, TEX. CODE CRIM. PROC. art. 2.12 (defining "peace officers" as officers licensed by the State under the Texas Occupations Code); art. 2.13 (assigning Code enforcement duties to "peace officers," not to cities *per se*).

Under Texas law, the City *as such* has no legal power to enforce the Texas Penal Code. *See Office of the AG v. Weatherspoon*, 472 S.W.3d 280, 283 (Tex. 2015) ("An entire agency does not become an appropriate law-enforcement authority merely because some divisions have such power."); *Jones v. City of Port Arthur*, No. 09-14-00442, 2016 Tex. App. LEXIS 12357, *23 (Tex. App.—Beaumont 2016, no pet.) (mem. op.) ("That the City has a division within it, the Police Department, charged with investigating and prosecuting crimes, does not transform the entire City as a governmental entity into an appropriate law-enforcement entity.") (following *Weatherspoon*, *supra*).

29

Accordingly, the City *as such* is an improper defendant in a pre-enforcement facial challenge of the constitutionality of Section 3 of S.B. 12. *Okpalobi v. Foster*, 244 F.3d 405, 426-27 (5th Cir. 2001) ("Because these defendants have no powers to redress the injuries alleged, the plaintiffs have no case or controversy with these defendants that will permit them to maintain this action in federal court."). An injunction prohibiting the City *as such* from enforcing a Penal Code provision grants no redress, because the City lacks power in its capacity as the common law employer of city police to prohibit these officers from any carrying out official duties imposed on them by state statutes. That municipal police officers have theoretical power pursuant to their state-issued peace officer licences to arrest violators of the Texas Penal Code does not create any chill traceable to the City *as such*.

     5.   <u>Mootness</u>.

The "case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990); *see also Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974) ("The rule in federal cases is that an actual

controversy must be extant at all stages of review, not merely at the time the complaint is filed."). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (citations and quotations omitted).

Even if, *arguendo*, this suit against the City of Abilene were ever a ripe controversy in the first place, it became moot with the issuance of the permanent injunction against the Texas Attorney General. The injunction against the State AG is *res judicata* as to the unconstitutionality of S.B. 12, and all local officials who derive their enforcement power through state law are bound by that judgment through the doctrine of virtual representation. *See Harris County v. Carmax Auto Superstores Inc.*, 177 F.3d 306, 318 (5th Cir. 1999) (recognizing that "a local law enforcement official is bound when his interests are represented by the state attorney general") (citing cases); *see also Buquer v. City of Indianapolis*, No. 1:11-cv-708-SEB, 2013 U.S. Dist. LEXIS 45084, 2013 WL 1332158 (S.D. Ind. Mar. 28, 2013) (after invalidating a state law on a facial challenge,

court dismissed Section 1983 claim for injunctive relief against a city as "no longer ripe for adjudication").

The district court acknowledged that under *Carmax Auto Superstores*, local officials are bound by the Court's ruling against the Texas Attorney General, stating: "The Court notes that a final judgment finding S.B. 12 unconstitutional and enjoining the Texas Attorney General from enforcing it binds all state and local governmental actors commanded or authorized to act under it."[50] (citing *Carmax Auto Superstores*, 177 F.3d at 318). Yet the court stopped short of holding the controversy moot as to the City – at least for now: "Therefore, while the Defendants are proper parties, Plaintiffs's [sic] claims *may become moot* as to all Defendants except for Paxton."[51] If not now, then when?

A demonstration of irreparable injury is "a traditional prerequisite to injunctive relief," *Steffel*, 415 U.S. at 471, and in the wake of the judgment against the Attorney General no such threat by the City has

---

[50] ROA.1264.

[51] *Id.* (emphasis added).

32

been shown.[52] The judgment against Texas Attorney General is *res judicata* as to all local officials who may purport to act under the authority of S.B. 12, unless and to the extent a higher federal court – this Court – holds otherwise. The final judgment ends any live controversy with the City, since there is no objectively demonstrable prospect of the City directing its officials to enforce a law that the district court has declared unconstitutional. There is nothing in the evidence to suggest that the City, which has taken no stand on the validity of the law, will now treat the law as valid unless the municipality is also enjoined from enforcing it.

---

[52] *See also id.* at 477 (White. J., concurring) ("I would anticipate that a final declaratory judgment entered by a federal court holding particular conduct of the federal plaintiff to be immune on federal constitutional grounds from prosecution under state law should be accorded *res judicata* effect in any later prosecution of that very conduct. There would also, I think, be additional circumstances in which the federal judgment should be considered as more than a mere precedent bearing on the issue before the state court."); *id.*, at 483 (Rehnquist, J., concurring) ("'The persuasive force of the federal court's opinion and judgment may lead state prosecutors, courts, and legislators to reconsider their respective responsibilities toward the statute. Enforcement policies or judicial construction may be changed, or the legislature may repeal the statute and start anew.'") (brackets and emphasis omitted) (quoting *Perez v. Ledesma*, 401 U.S. 82, 125 (1971) (Brennan, J., concurring and dissenting in part)).

C.    No Evidence to Support Section 1983 Municipal Liability.

To be entitled to a permanent injunction, a plaintiff must demonstrate, among other things, "actual success on the merits." *See eBay Inc. v. MercExch., LLC*, 547 U.S. 388, 391 (2006). The evidence does not prove a meritorious claim against the City of Abilene.

"[C]laims brought pursuant to § 1983 sound in tort." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 709 (1999). "[U]nder § 1983, local governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis original in *Connick*) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)); *see also Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 665-83 (1978). "It is well-established that a city is not liable under § 1983 on the theory of *respondeat superior*." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Monell*). Likewise, no Section 1983 liability can be imposed on the theory of "*respondeat inferior*" either – that is, "imputing statutory liability in the opposite direction, from a culpable principal to an innocent agent." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 535

(5th Cir. 1997) (quoting *Brownlee v. Lear Siegler Management Servs. Corp.*, 15 F.3d 976, 978 (10th Cir. 1994)).

Section 1983 claims against a local government "require three elements: '(1) a policymaker; (2) an official policy; and (3) a violation of a constitutional right whose 'moving force' is the policy or custom." *Arnone v. Dallas Cnty.*, 29 F.4th 262, 265-66 (5th Cir. 2022) (quoting *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018) (en banc)). "This 'policy or custom' requirement extends to claims for injunctive and declaratory relief." *Robinson v. Hunt Cty.*, 921 F.3d 440, 447 (5th Cir. 2019) (citing *Los Angeles County v. Humphries*, 562 U.S. 29, 31 (2010)).

All three elements of *Monell* liability are missing in the evidence – no city policy, no city policymaker fault, and no causal nexus between any city policy and the claimed pre-enforcement chill alleged by these Plaintiffs. The fact that the district court omitted any discussion of the *Monell* elements in its findings and conclusions suggests that the court agreed with the Plaintiffs that these essential elements are of no consequence in a pre-enforcement challenge. This City strongly differs on this point of law.

35

The City of Abilene is not liable under Section 1983 for just any official policy that may violate these Plaintiffs' constitutional rights. Only a policy of the City's own – a policy of the City itself – must be shown to have caused Plaintiffs' injuries. *See Arnone v. Cnty. of Dallas Cnty.*, 29 F.4th 262, 266 (5th Cir. 2022) ("Dallas County can be held liable only for those decided or acquiesced to by a *county* policymaker.") (emphasis original).  "Section 1983 litigation requires [the Court] to identify the level of government for which an official was acting when establishing the policy that is relevant to the claims." *Daves v. Dallas Cnty.*, 22 F.4th 522, 533 (5th Cir. 2022) (en banc) (citing *McMillian v. Monroe Cnty.*, 520 U.S. 781, 784-85 (1997)).

The City's final policymakers are "the officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008) (quoting *McMillian*, 520 U.S. at 784-85 (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989))); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988). The issue of

36

who is the final policymaker for purposes of Section 1983 municipal liability is a question of state and local law, reviewed de novo on appeal. *See Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016) (and cases cited). Under the Abilene City Charter, the relevant final policymaker for the City is its elected City Council. *See* ABILENE CHARTER, Art. 2, § 10.[53]

Section 1983 local governmental liability cannot be based upon state statutory mandates, for the simple reason that a state law is not a city policy of the City's final policymaker. *See, e.g.*, *McMillian v. Monroe Cty.*, 520 U.S. 781, 784-85 (1997) (sheriff carrying out statutory duties imposed by the state was not acting as a county policymaker; hence, affirming denial of Section 1983 county liability); *see also Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980) (holding that a county was not liable under § 1983 for county's judge's enforcement of a state statute); *Crane v. Texas*, 759 F.2d 412, 430 (5th Cir. 1985) ("[L]ocal governments and their officials who act in conformance with a state statutory scheme will not be held liable for § 1983 damages if the scheme is later held unconstitutional."); *Bigford v. Taylor*, 834 F.2d 1213, 1223 (5th Cir. 1988)

---

[53] ROA.493.

(a local magistrate is not a county policymaker when carrying out the statutory policy of the State of Texas); *Arnone*, 29 F.4th at 266 (affirming dismissal of county where actions of county official were directed by state law); *Daves*, 22 F.4th at 545 ("if there is no defendant county official who acts as a policymaker as to the function at issue, then the County must be dismissed as a party") (citing *McMillian*, 520 U.S. at 783); *Echols v. Parker*, 909 F.2d 795 (5th Cir. 1990) (local county officials who arrested the plaintiffs under the state's anti-boycott statute were acting as state rather than county actors, reasoning: "A county official pursues his duties as a state agent when he is enforcing state law or policy. He acts as a county agent when he is enforcing county law or policy."); *West v. Congemi*, 28 F. Supp. 2d 385, 394 (E.D. La. 1998) ("The Fifth Circuit has long recognized that simply following the mandatory dictates of state law cannot form a predicate for *Monell* liability.") (citing *Bigford*, 834 F.2d at 1222). The relevant policymaker in this case is the Texas Legislature, not the Abilene City Council.

In imposing Section 1983 liability against the City, the district court appears to have adopted the Plaintiffs' novel argument that a local

government is presumed to have adopted a state law as its own, absent compelling evidence to the contrary. So say the Plaintiffs:

> [C]ritically, in the context of a pre-enforcement challenge, none of the city or county defendants disavows SB 12 or offers compelling evidence they will not adopt policies and practices that prohibit drag shows and other First Amendment activity from occurring on city or county property. *Such presumed prohibitions by the municipal defendants are sufficient to establish liability regardless of whether they flow from state law.*[54]

No case can be found supporting the "conceptual leap" in inherent in this argument – that a city which fails to "disavow" an allegedly unconstitutional state law is as guilty as the State Legislature that passed it. The *Monell*-based case law in the Fifth Circuit, indeed *Monell* itself, starts with the requirement of a city policy promulgated by the city's policymakers. *Monell*, 436 U.S. at 690 ("Local governing bodies can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision *officially*

---

[54] ROA.875 (emphasis added); *see also* ROA.1773 (argument of counsel) ("[W]e agree that they have not yet taken any steps to enforce this law. It's not in effect. Presumably once the law goes into effect, the final policymakers for the municipalities will be the responsible entity.").

*adopted and promulgated by that body's officers.*"). That a state law is on the books is not enough to deem it a city policy to enforce it. *See Ness v. City of Bloomington*, 11 F.4th 914, 922 (8th Cir. 2021) ("We decline to make the 'conceptual leap' that the enforcement of a state statute by city police officers supports a claim that the alleged unconstitutional statute was adopted as a city policy."); *Surplus Store & Exch., Inc. v. City of Delphi*, 928 F.2d 788, 791 (7th Cir. 1991) ("It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law.").

The out-of-jurisdiction cases cited by the district court are easily distinguishable. As the Second Circuit has summarized these cases:

> Three circuits – the Sixth, Ninth, and Eleventh – have issued decisions that, to varying degrees, support plaintiff's contention that a municipality engages in policy making when it determines to enforce a state law that authorizes it to perform certain actions but does not mandate that it do so. *See Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (holding that municipality's policy of allowing deadly force in certain situations was a *Monell* policy even though a state statute authorized the use of deadly force in the situations allowed by the municipality as well as others, because the state

law did not require the use of deadly force in any situation); *Evers v. County of Custer*, 745 F.2d 1196, 1201 (9th Cir. 1984) (holding that County Board's issuance of a declaration that plaintiff's road was public sufficed to impose liability although state law allowed such a declaration); *Cooper v. Dillon*, 403 F.3d 1208, 1222-23 (11th Cir. 2005) (holding that municipality could be liable for enforcing an unconstitutional state statute when (1) a municipal ordinance prohibited all crimes proscribed by state law, and (2) the state law merely authorized enforcement without requiring it).

*Vives v. City of New York*, 524 F.3d 346, 351 (2d Cir. 2008) (also noting at p. 353 that "we agree with all circuits to address state laws mandating enforcement by municipal police officers [i.e., the Fourth, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits] that a municipality's decision to honor this obligation is not a conscious choice. As a result, the municipality cannot be liable under *Monell* in this circumstance.").

In *Vives*, the Court also pointed to another key feature of the line of cases relied on by the district court: "While these decisions can be read to suggest that a distinction should be made between a state law mandating municipal action and one that merely authorizes it, in each case the [local] policymaker was alleged to have gone beyond merely enforcing the state statute." The Court noted:

> In *Evers*, the County Board issued a declaration
> subjecting a particular piece of property to a finding
> authorized by state law. *See Evers*, 745 F.2d at
> 1198. In *Garner*, the municipality promulgated a
> deadly force policy that differed from the policy
> authorized by state law albeit in ways that
> restricted the use of deadly force. *See Garner*, 8 F.3d
> at 361. *See Cooper*, 403 F.3d at 1221-23.

*Vives*, 524 F.3d at 351.

The fact that the City in open court refused to "disavow" the law is also immaterial, given that cities, even those operating under home rule charters, cannot repudiate or nullify a state statute. The Texas Constitution declares state statutes superior to any municipal enactment. *See* TEX. CONST. art. XI, § 5 ("no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State"). Declaring neutrality from a position on the sidelines is perfectly consistent with real neutrality. All the City legally can do is declare its neutrality and respect the ruling of the federal courts on whether the law is valid.

In addition, there is no allegation or proof in this case that the City has deprived Plaintiffs of their constitutional rights as a matter of some

42

deliberate choice on the part of the City's final policymaker. To the contrary, all Plaintiffs have shown is that the City did in fact issue APA a permit for its drag-oriented street parade, and the City was not shown to have expressed any reservation about whether the permit would be retracted. No proof was offered to show that a City policymaker with prosecutorial discretion chose to enforce an unconstitutional law in a manner that caused some constitutional injury.

In short, the City has committed no constitutional tort. It is a case of *respondeat inferior*, which § 1983 does not allow. Because no Abilene city policy is alleged, much less proven, to have caused any Plaintiff to self-censor their claimed constitutionally-protected drag performances, the Section 1983 liability judgment against the City must be reversed and rendered in the City's favor.

### D.     Abuse of Discretion in Deferring Ruling on City's Attorneys' Fee Liability.

Over the City's objection,[55] the District Court erred in deferring its decision whether the City is liable for Plaintiffs' attorneys' fees. FED. R. CIV. P. 54(d) establishes a procedure for presenting claims for attorneys' fees.

---

[55] ROA.1860-61.

FED. R. CIV. P. 54(d)(2) advisory committee notes 1993 amendment. In proposed conclusions of law, the City requested the Court, regardless of whether S.B. 12 is valid, to rule the City is not liable for attorneys' fees.[56] This Court, as well as the Ninth and Seventh Circuits, hold that when local enforcement officials are sued for their actions enforcing a challenged state law, an attorney's fee award may be properly entered only against the State, not against the local government. *Echols*, 909 F.2d at 800 (affirming order directing State of Mississippi to pay attorney fee award, even though state was not a party, where the action of local officials "much like that of a county sheriff in enforcing a state law, may more fairly be characterized as the effectuation of the policy of the State … embodied in that statute, for which the citizens of a particular county should not bear singular responsibility") (quoting *Familias Unidas*, 619 F.2d at 404); *Buffin*, 23 F.4th at 962 (citing *Echols*, 909 F.2d at 799 and holding that "the district court correctly found that the Sheriff acted as a state official for the purposes of this action, subjecting the State to liability for attorney's fees under § 1988."); *Herbst v. Ryan*, 90 F.3d 1300, 1302, 1306 (7th Cir. 1996)

---

[56] ROA.988-89.

(affirming district court order directing payment by State of Illinois of attorneys' fees incurred in litigation naming two state officials and 102 county district attorneys as defendants).

Since Plaintiffs have challenged only the effectuation of State policy embodied in S.B. 12, the citizens of the City of Abilene should not bear any responsibility for any attorney fee award. Judicial economy, therefore, was not advanced by the District Court's refusal to address that issue before this appeal. In fact, leaving the issue undecided invites yet another appeal in this case and was an abuse of discretion. This Court should render the judgment for the City that the District Court should have by denying the Plaintiffs' claim for attorneys' fees from the City.

V.    CONCLUSION & PRAYER.

For the foregoing reasons, the Court of Appeals should reverse the District Court's final judgment as to the City of Abilene and either dismiss Plaintiffs' claims against the City for want of subject-matter jurisdiction, or with prejudice on the merits; and regardless of whether the judgment on the merits is affirmed or reversed, the Court should reverse the District Court's order deferring a determination of the City's liability for attorneys'

fees and costs but instead render the judgment that the City is not liable for attorneys' fees or other costs of court. The City also seeks any other or further relief to which it may be entitled, including an award of the taxable costs for this appeal.

Respectfully submitted,

VIADA & STRAYER

By: /s/ *Ramón G. Viada III*
Ramón G. Viada III
Texas State Bar No. 20559350
17 Swallow Tail Court
The Woodlands, Texas 77381
(281) 419-6338
rayviada@viadastrayer.com

Attorney for Appellant
City of Abilene, Texas

## CERTIFICATE OF SERVICE

I certify that all counsel of record have been served a true and correct copy of this Brief by electronic submission for filing and service through the Electronic Case Filing System of the Fifth Circuit Court of Appeals on January 9, 2024.

/s/ *Ramón G. Viada III*
Ramón G. Viada III

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by FED. R. APP. P. 32(f), this documents contains 9,186 words.

2.      This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Corel WordPerfect 2021 in 14 point font and New Century Schoolbook style.


                              /s/ *Ramón G. Viada III*
                              Ramón G. Viada III

47