Case No. 23-20480
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————————

The Woodlands Pride, Incorporated; Abilene Pride Alliance;
Extragrams L.L.C.; 360 Queen Entertainment, L.L.C.; Brigitte
Bandit,
*Plaintiffs-Appellees,*

v.

Warren Kenneth Paxton, in an Official Capacity as Attorney
General of Texas; Brett Ligon, in an Official Capacity as District
Attorney of Montgomery County; Montgomery County, Texas;
James Hicks, in an Official Capacity as District Attorney of
Taylor County; Taylor County, Texas; City of Abilene, Texas,

*Defendants-Appellants.*

————————

On Appeal from The United States District Court, Southern District of
Texas, Houston Division
Case No. 4:23-cv-2847
The Honorable Judge David Hittner

————————

**TEXAS CIVIL RIGHTS PROJECT'S
MOTION FOR LEAVE TO FILE BRIEF AS AMICUS CURIAE**

————————

WHEELER TRIGG O'DONNELL LLP
Meghan Frei Berglind
Elizabeth Poché
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: 303.244.1800
Email:   berglind@wtotrial.com
         poche@wtotrial.com

TEXAS CIVIL RIGHTS PROJECT
Travis Fife
Dustin Rynders
Molly Petchenik
1405 Montopolis Drive,
Austin, TX 78741
Telephone: 512.474.5073
Email:
travis@texascivilrightsproject.org

*Attorneys for Amicus Curiae Texas Civil Rights Project*

# CERTIFICATE OF INTERESTED PARTIES

Pursuant to Fifth Circuit Rule 29.2, the undersigned counsel of record certify that, in addition to those already listed in the parties' briefs, the following listed persons and entities as described in the fourth sentence of rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Amicus:** Texas Civil Rights Project

**Counsel for Amicus:** Meghan Frei Berglind and Elizabeth Poché of Wheeler Trigg O'Donnell LLP. Travis Fife, Dustin Rynders, and Molly Petchenik of the Texas Civil Rights Project.

*s/Meghan Frei Berglind*
Meghan Frei Berglind
WHEELER TRIGG O'DONNELL LLP

## MOTION FOR LEAVE
## TO FILE AMICUS CURIAE BRIEF

Pursuant to Federal Rule of Appellate Procedure 29 and Fifth Circuit Rule 29.1, amicus curiae, Texas Civil Rights Project ("TCRP") respectfully move this Court for leave to file an amicus brief in support of Plaintiffs-Appellees. A copy of the brief TCRP seeks leave to file is attached hereto and submitted to the Court pending disposition of this motion for leave to file.

## MOVANT'S INTERESTS

TCRP is a non-profit organization made up of Texas lawyers and advocates who strive to advance the civil rights of Texans. For more than thirty years, TCRP has litigated and advocated to advance the rights of the state's most vulnerable populations. This frequently includes litigation and advocacy to oppose criminal laws that restrict Texans' First Amendment rights.

## CONSENT OF THE PARTIES

TCRP has the consent of all parties to file this brief.

## REASONS FOR AND
## RELEVANCE OF AMICUS CURIAE

TCRP submits this brief in support of Plaintiffs-Appellees because the issues it presents—whether municipalities, counties, and public

officers can be held liable in a pre-enforcement constitutional challenge of this nature—is of the utmost importance to TCRP's work seeking to ensure the fair and equitable treatment of all Texans. These issues arise frequently in civil rights litigation and directly affect the cases, and the lives, of those on whose behalf TCRP regularly litigates and advocates. TCRP hopes that its perspective on the issue will assist the Court in resolving this appeal.

The proposed amicus brief would serve the critical function of providing information and context to the Court regarding: (1) the history and importance of pre-enforcement challenges, especially as they relate to First Amendment challenges; (2) Section 1983 municipal liability principles as they relate to municipal enforcement of state statutes and the Municipal Defendants here; and (3) Fifth Circuit *Ex parte Young* jurisprudence as it relates to the District Attorney Defendants here.

## CONCLUSION

For the foregoing reasons, TCRP respectfully requests that the Court grant leave to file an amicus curiae brief in support of Plaintiffs-Appellees.

Dated: April 17, 2024        Respectfully submitted,


*s/ Meghan Frei Berglind*
Meghan Frei Berglind
Elizabeth Poché
Wheeler Trigg O'Donnell LLP

and

Travis Fife
Dustin Rynders
Molly Petchenik
Texas Civil Rights Project

Attorneys for Amicus Curiae, Texas
Civil Rights Project

**CERTIFICATE OF SERVICE**

I certify that I electronically filed the foregoing on April 17, 2024, with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*s/Meghan Frei Berglind*

# CERTIFICATE OF COMPLIANCE WITH RULE 27(d)

1.　　This motion  complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because:

> [X] this motion contains 337 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

2.　　This motion complies with the typeface and type style requirements of Fed. R. App. P. 27(d)(1)(E), the typeface requirements of Fed. R. App. P. 32(a)(5), and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> [X] this motion has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Century Schoolbook 14-point font.

Dated: April 17, 2024

*s/ Meghan Frei Berglind*
WHEELER TRIGG O'DONNELL LLP
Meghan Frei Berglind
Elizabeth Poché
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: 303.244.1800
Email:　berglind@wtotrial.com
　　　　poche@wtotrial.com

TEXAS CIVIL RIGHTS PROJECT
Travis Fife
1405 Montopolis Drive,
Austin, TX 78741
Telephone: 512.474.5073
Email: travis@texascivilrightsproject.org

# Brief of The Texas Civil Rights Project as *Amicus Curiae* in Support of Defendants-Appellants

# United States Court Of Appeals For The Fifth Circuit

—————————

**The Woodlands Pride, Incorporated; Abilene Pride Alliance; Extragrams L.L.C.; 360 Queen Entertainment, L.L.C.; Brigitte Bandit,**

*Plaintiffs-Appellees,*

v.

**Warren Kenneth Paxton, in an Official Capacity as Attorney General of Texas; Brett Ligon, in an Official Capacity as District Attorney of Montgomery County; Montgomery County, Texas; James Hicks, in an Official Capacity as District Attorney of Taylor County; Taylor County, Texas; City of Abilene, Texas,**

*Defendants-Appellants.*

—————————

On Appeal from The United States District Court, Southern District of Texas, Houston Division
Case No. 4:23-cv-2847
The Honorable Judge David Hittner

—————————

**BRIEF OF THE TEXAS CIVIL RIGHTS PROJECT
AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS-APPELLANTS**

—————————

Travis Fife
Dustin Rynders
Molly Petchenik
TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive,
Austin, TX 78741
Telephone: 512.474.5073
Email:
travis@texascivilrightsproject.org

Meghan Frei Berglind
Elizabeth Poché
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: 303.244.1800
Email:  berglind@wtotrial.com
          poche@wtotrial.com

*Attorneys for Amicus Curiae Texas Civil Rights Project*

# CERTIFICATE OF INTERESTED PARTIES

Pursuant to Fifth Circuit Rule 29.2, the undersigned counsel of record certify that, in addition to those already listed in the parties' briefs, the following listed persons and entities as described in the fourth sentence of rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Amicus:** Texas Civil Rights Project

**Counsel for Amicus:** Meghan Frei Berglind and Elizabeth Poché of Wheeler Trigg O'Donnell LLP. Travis Fife, Dustin Rynders, and Molly Petchenik of the Texas Civil Rights Project.

*s/Meghan Frei Berglind*
Meghan Frei Berglind
WHEELER TRIGG O'DONNELL LLP

**TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PARTIES ...........................................i

TABLE OF AUTHORITIES.....................................................................iv

INTEREST OF *AMICUS CURIAE*............................................................ 1

INTRODUCTION AND SUMMARY OF ARGUMENT............................3

ARGUMENT .........................................................................................5

I.    PRE-ENFORCEMENT REVIEW IS VITAL TO
      PROTECTING CITIZENS FROM GOVERNMENT
      OVERREACH, ESPECIALLY IN THE FIRST
      AMENDMENT CONTEXT. ...........................................................5

II.   PRE-ENFORCEMENT MUNICIPAL AND COUNTY
      LIABILITY IS APPROPRIATE UNDER SECTION 2 OF
      S.B. 12. ............................................................................................9

      A.    *Monell* liability covers a broad spectrum of municipal
            actions. ................................................................................ 10

      B.    Application of the *Monell* test supports municipal
            liability................................................................................. 14

            1.    The municipalities' actions under S.B. 12 will be
                  official policies. ........................................................ 14

            2.    S.B. 12 empowers the ultimate policymaker—the
                  municipalities themselves. ......................................21

            3.    Municipal policies are the moving force behind
                  Plaintiffs' First Amendment deprivations...................24

# TABLE OF CONTENTS
## (continued)

Page

III. PRE-ENFORCEMENT LIABILITY FOR THE DISTRICT ATTORNEY DEFENDANTS IS ALSO APPROPRIATE. .............25

    A. Because the district attorneys are local officials, they are not entitled to Eleventh Amendment immunity. ...........26

    B. Even if the district attorneys are state officials, they are not entitled to sovereign immunity.................................28

CONCLUSION ........................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*303 Creative LLC v. Elenis,*
600 U.S. 570 (2023) ................................................................. 6, 7

*Alvarez v. City of Brownsville,*
904 F.3d 382 (5th Cir. 2018) .................................................. 11

*Amnesty Am. v. Town of W. Hartford,*
361 F.3d 113 (2d Cir. 2004) .................................................. 24

*Arnone v. Dallas Cnty.,*
29 F.4th 262 (5th Cir. 2022) ..................................... 11, 22, 23

*Babbitt v. Farm Workers,*
442 U.S. 289 (1979) .................................................................. 8

*Baggett v. Bullitt,*
377 U.S. 360 (1964) .................................................................. 8

*Barilla v. City of Houston,*
13 F.4th 427 (5th Cir. 2021) ................................................ 7-8

*Bethesda Lutheran Homes & Servs., Inc. v. Leean,*
154 F.3d 716 (7th Cir. 1998) .................................................. 18

*Blanchette v. Conn. Gen. Ins. Corps.,*
419 U.S. 102 (1974) .................................................................. 8

*Bd. of Cnty. Comm'rs v. Brown,*
520 U.S. 397 (1997) ......................................................... passim

*Book People, Inc. v. Wong,*
91 F.4th 318 (5th Cir. 2024) .................................... 8, 15, 30

*Braidwood Mgmt., Inc. v. EEOC,*
70 F.4th 914 (5th Cir. 2023) .................................................. 21

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors,*
  854 F. App'x 521 (4th Cir. 2021) .............................................. 16, 17, 20

*City of Austin v. Paxton,*
  943 F.3d 993 (5th Cir. 2019) ....................................................... 30, 31

*City of Canton v. Harris,*
  489 U.S. 378 (1989) ............................................................................ 13

*City of St. Louis v. Praprotnik,*
  485 U.S. 112 (1988) ............................................................................ 12

*Cooper v. Dillon,*
  403 F.3d 1208 (11th Cir. 2005) ............................................... 17, 18, 21

*Crane v. Texas,*
  766 F.2d 193 (5th Cir. 1985) ............................................................. 27

*Evers v. Custer Cnty.,*
  745 F.2d 1196 (9th Cir. 1984) ........................................................... 17

*Ex parte Young,*
  209 U.S. 123 (1908) ....................................................................... 6, 28

*Garner v. Memphis Police Dep't,*
  8 F.3d 358 (6th Cir. 1993) ................................................................ 16

*Jett v. Dallas Indep. Sch. Dist.,*
  491 U.S. 701 (1989) ........................................................................... 22

*Justice v. Hosemann,*
  771 F.3d 285 (5th Cir. 2014) ............................................................... 7

*La. Debating & Literary Ass'n v. City of New Orleans,*
  42 F.3d 1483 (5th Cir. 1995) ........................................................... 8-9

*Languirand v. Hayden,*
  717 F.2d 220 (5th Cir. 1983) ............................................... 11

*Los Angeles Cnty. v. Humphries,*
  562 U.S. 29 (2010) ............................................................... 23

*Majors v. Abell,*
  317 F.3d 719 (7th Cir. 2003) ............................................... 13

*McMillian v. Monroe Cnty.,*
  520 U.S. 781 (1997) ............................................................. 22

*Milam v. City of San Antonio,*
  113 F. App'x 622 (5th Cir. 2004) ....................................... 12

*Miller v. California,*
  413 U.S. 15 (1973) ............................................................... 19

*Monell v. Dep't of Soc. Servs.,*
  436 U.S. 658 (1978) .................................... 10, 11, 18-19, 22

*Morris v. Livingston,*
  739 F.3d 740 (5th Cir. 2014) ............................................... 29

*Nat'l Press Photographers Ass'n v. McCraw,*
  90 F.4th 770 (5th Cir. 2024) ......................................... *passim*

*Okpalobi v. Foster,*
  244 F.3d 405 (5th Cir. 2001) ......................................... 28, 32

*Owen v. City of Independence,*
  445 U.S. 622 (1980) ............................................................. 21

*Pembaur v. City of Cincinnati,*
  475 U.S. 469 (1986) ................................................ 12, 18, 19

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Perez v. Ledesma,*
401 U.S. 82 (1971) ........................................................... 6

*Peterson v. City of Fort Worth,*
588 F.3d 838 (5th Cir. 2009) ............................................ 11

*Quinn v. Roach,*
326 F. App'x 280 (5th Cir. 2009) ..................................... 27

*Richardson v. Flores,*
28 F.4th 649 (5th Cir. 2022) ........................................... 31

*Speech First, Inc. v. Fenves,*
979 F.3d 319 (5th Cir. 2020) .................................. 8, 13, 15

*State v. Stephens,*
663 S.W.3d 45 (Tex. Crim. App. 2021) ........................... 32

*Steffel v. Thompson,*
415 U.S. 452 (1974) ................................................ *passim*

*Sup. Ct. of Va. v. Consumers Union of U.S., Inc.,*
446 U.S. 719 (1980) ........................................................ 25

*Surplus Store & Exchange, Inc. v. City of Delphi,*
928 F.2d 788 (7th Cir. 1991) ........................................... 17

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014) .................................................. 7, 8, 31

*Tex. All. for Retired Ams. v. Scott,*
28 F.4th 669 (5th Cir. 2022) ........................................... 31

*Tex. Democratic Party v. Abbott,*
961 F.3d 389 (5th Cir. 2020) ...................................... 29-30

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Tex. Democratic Party v. Abbott*,
   978 F.3d 168 (5th Cir. 2020) .........................................................29, 30

*Thomas v. Union Carbide Agric. Prods. Co.*,
   473 U.S. 568 (1985) ............................................................................21

*United States v. Abbott*,
   85 F.4th 328 (5th Cir. 2023).........................................................28, 29

*Virginia v. Am. Booksellers Ass'n, Inc.*,
   484 U.S. 383 (1988) ............................................................................15

*Vives v. City of New York*,
   524 F.3d 346 (2d Cir. 2008)...............................................16, 17, 21, 24

*Whole Women's Health v. Jackson*,
   595 U.S. 30 (2021) .......................................................................6, 7, 29

**Statutes**

28 U.S.C. § 2201................................................................................................6

42 U.S.C. § 1983.............................................................................................10

Abilene, Tex., Code, Part I, Art. I, § 2 ...................................................22

Abilene, Tex., Code, Part. I, Art. II § 10................................................22

S.B. 12, § 3(a)(2)..............................................................................................19

Tex. Code of Crim. P. Art. 2.01 ...............................................................25

Tex. Gov't Code § 43.105(b) ......................................................................25

Tex. Loc. Gov't Code § 87.011(3)(B) .......................................................25

Tex. Loc. Gov't Code § 87.013(a)(2) ........................................................26

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

Tex. Loc. Gov't Code § 243.0031 ...................................................... 9

Tex. Loc. Gov't Code § 243.0031(b) .............................................. 10

Tex. Loc. Gov't Code § 243.0031(c) ....................................... 10, 14

Tex. Penal Code § 43.28(b) ............................................................ 25

Tex. Penal Code § 43.28(c) ............................................................ 25

**Other Authorities**

49 Tex. Reg. 1357 (Apr. 6, 2024),
    https://tinyurl.com/yckkwmv4 ............................................... 26

Bill Analysis, S.B. 12 (Tex. 2023) .............................................. 20

Commissioner's Court, Montgomery County (Apr. 8, 2024),
    https://tinyurl.com/4atar3ee ................................................... 22

Mar. 13, 2024 Press Release, Ken Paxton Att'y Gen. of Tex.
    (Apr. 6, 2024),
    https://tinyurl.com/2khpwad3 ................................................ 26

Resolutions, Taylor County (Apr. 8, 2024),
    https://tinyurl.com/bdfxc4xt .................................................. 23

## INTEREST OF *AMICUS CURIAE*

The Texas Civil Rights Project ("TCRP") is a non-profit organization made up of Texas lawyers and advocates who strive to advance the civil rights of Texans. For more than thirty years, TCRP has litigated and advocated to advance the rights of the state's most vulnerable populations. This frequently includes litigation and advocacy to oppose criminal laws that restrict Texans' First Amendment rights.

TCRP submits this brief in support of Plaintiffs-Appellees because the issues it presents—whether municipalities, counties, and public officers can be held liable in a pre-enforcement constitutional challenge of this nature—is of the utmost importance to TCRP's work seeking to ensure the fair and equitable treatment of all Texans. These issues arise frequently in civil rights litigation and directly affect the cases, and the lives, of those on whose behalf TCRP regularly litigates and advocates. TCRP hopes that its perspective on the issue will assist the Court in resolving this appeal.

Pursuant to Rule of Appellate Procedure 29(a)(4)(E), counsel for *amicus curiae* state that no counsel for a party authored this brief in whole or in part and that no party or party's counsel (or any other

person, other than TCRP, its employees, and its counsel) contributed money that was intended to fund the preparation or submission of this brief.

## INTRODUCTION AND SUMMARY OF ARGUMENT

In seeking to enjoin Texas S.B. 12, the Plaintiffs join a long line of litigants who have sought pre-enforcement review to protect their constitutional rights. And like successful plaintiffs in other pre-enforcement cases, Plaintiffs here name as defendants the entities and officials who threaten their rights under different sections of S.B. 12.

For their challenge to Section 1—which authorizes the Texas Attorney General to recover civil penalties or an obtain an injunction—Plaintiffs name Texas Attorney General Warren Kenneth Paxton. To challenge Section 2—which authorizes and directs enforcement of S.B. 12 by municipalities and counties—Plaintiffs sue Montgomery and Taylor Counties and the City of Abilene. And for Section 3—which makes violations of S.B. 12 a misdemeanor under the Texas Penal Code—Plaintiffs name the District Attorneys of Montgomery and Taylor Counties. All of these Defendants are properly named, but this brief discusses the municipality, counties, and district attorneys.

First, the brief addresses the history and benefit of pre-enforcement challenges. These challenges protect plaintiffs from a dilemma: refrain from constitutionally protected activity or participate

in the activity and risk prosecution. Because pre-enforcement review is especially important in First Amendment cases like this one, TCRP urges the Court to keep this pre-enforcement lens at the forefront of its review.

Next, the brief addresses the case against the counties and municipality and argues that Plaintiffs' claims against them satisfy the *Monell*'s three requirements for municipal liability. There is a municipal policy: municipalities and counties will make a policy decision every time they forbid an applicant from holding a "sexually oriented performance" on public property or in front of minors. There are policymakers: the municipalities and counties themselves or their delegated policymakers will be making the decisions under Section 2. And there is causation: a municipal policy that violates federal law—which S.B. 12 does—is necessarily the moving force behind the corresponding constitutional injury.

Finally, this brief argues that the district attorneys, the lead prosecutors for their respective judicial districts, are proper defendants. This Court's precedent directs that Texas district attorneys are local officials with no claim to Eleventh Amendment immunity. Further,

even if they were state officials, the district attorneys easily satisfy the *Ex parte Young* exception to sovereign immunity because they have a duty to enforce the penal code—including Section 3—and face removal from office if they refuse.

Thus, the Court should hold that the municipal Defendants and district attorneys are proper defendants for Plaintiffs' challenges to Sections 2 and 3 of S.B. 12, and affirm the district court's decision.

## ARGUMENT

### I.   Pre-enforcement review is vital to protecting citizens from government overreach, especially in the First Amendment context.

Pre-enforcement challenges allow for the efficient and expeditious review of constitutionally suspect laws. Rather than risking prosecution or avoiding arguably protected activity altogether—choosing "between the Scylla of intentionally flouting state law and the Charybdis of forgoing … constitutionally protected activity," *Steffel v. Thompson*, 415 U.S. 452, 462 (1974)—pre-enforcement challenges allow courts to weigh in on laws' constitutionality before those laws are applied against the people.

Pre-enforcement challenges to state laws are nothing new. For more than a century, the Supreme Court has recognized that courts can enjoin "officers of the state … who **threaten and are about to commence** proceedings, either of a civil or criminal nature, to enforce … an unconstitutional act." *Ex parte Young*, 209 U.S. 123, 155–56 (1908) (emphasis added). Congress also gave its blessing to pre-enforcement review with the 1934 passage of the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, which allows courts to declare the rights of the parties "as an alternative to the strong medicine of the injunction … in cases where injunctive relief would be unavailable." *Steffel*, 415 U.S. at 466 (citing *Perez v. Ledesma*, 401 U.S. 82, 111–15 (1971) (Brennan, J., concurring)). As a result, by the middle of the last century, pre-enforcement review in Section 1983 actions like this one became "prominent." *Whole Women's Health v. Jackson*, 595 U.S. 30, 49 (2021).

In the decades since, pre-enforcement review has been relied on by litigants of all persuasions: from the anti-Vietnam-War pamphleteer of *Steffel*, 415 U.S. at 455–56, to the web designer who did not want to create wedding websites for same-sex couples in last year's *303 Creative LLC v. Elenis*, 600 U.S. 570, 579–80 (2023). In these and other cases,

the threat of prosecution is enough to trigger the courts' jurisdiction. *Steffel*, 415 U.S. at 459 (threats of criminal prosecution were neither "imaginary [n]or speculative" (citation omitted)); *303 Creative*, 600 U.S. at 583 ("credible threat" of administrative proceeding by state or private litigant). The result is that litigants are not forced to choose between exercising their rights and risking prosecution or refraining from constitutionally protected activity, a choice that "impose[s] a substantial hardship." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167–68 (2014).

That is not to say that there is an "unqualified right to pre-enforcement review of constitutional claims in federal court." *Whole Women's Health*, 595 U.S. at 49. But courts have relaxed jurisdictional requirements in pre-enforcement cases, especially when they involve a First Amendment right, "so that citizens whose speech might otherwise be chilled by fear of sanction can prospectively seek relief." *See Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 782 (5th Cir. 2024) (quoting *Justice v. Hosemann*, 771 F.3d 285, 294 (5th Cir. 2014)). To establish standing in such a case, "chilled speech or self-censorship" is a sufficient injury. *Barilla v. City of Houston*, 13 F.4th 427, 431 (5th Cir.

2021); *see also Speech First, Inc. v. Fenves*, 979 F.3d 319, 330–31 (5th Cir. 2020) ("It is not hard to sustain standing for a pre-enforcement challenge in the highly sensitive area of public regulations governing bedrock political speech."). A pre-enforcement plaintiff need not "confess that he will in fact violate" the law. *Susan B. Anthony List*, 573 U.S. at 163. They must only allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and … a credible threat of prosecution thereunder." *Id.* at 159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

Nor is ripeness a significant barrier to a pre-enforcement claim. Plaintiffs need not wait for a law to go into effect if its future operation against them is "patent." *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 143 (1974). Pre-enforcement cases are ripe when "[n]o other factual or legal developments are required for [the court] to decide this case." *Book People, Inc. v. Wong*, 91 F.4th 318, 334–34 (5th Cir. 2024) (noting also that withholding consideration would cause the plaintiffs hardship). Courts are also reluctant to abstain in favor of state court resolution when doing so "may inhibit the exercise of First Amendment freedoms." *Baggett v. Bullitt*, 377 U.S. 360, 378–79 (1964); *see also La.*

*Debating & Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1491–92 (5th Cir. 1995).

Despite courts' historic openness to First Amendment pre-enforcement challenges, Defendants ask the Court to deny this appeal on jurisdictional grounds. But embracing Defendants' jurisdictional arguments would undermine and contradict decades of precedent allowing pre-enforcement review when First Amendment rights are at risk. *Steffel*, 415 U.S. at 462. And accepting Defendants' view would deny Plaintiffs access to a federal forum to clarify their federal constitutional rights before facing criminal prosecution for protected activity. *Id.* at 459 ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.").

## II. Pre-enforcement municipal and county liability is appropriate under Section 2 of S.B. 12.

Plaintiffs brought their Section 1983 claims against three local Texas governments: Montgomery County, Taylor County, and the City of Abilene (collectively, the "municipalities"). Municipalities play a key role in S.B. 12's comprehensive restriction of sexually oriented performances. *See* Tex. Loc. Gov't Code § 243.0031. Section 2(b) of

S.B. 12 gives municipalities discretion to "regulate sexually oriented performances as the municipality or county considers necessary to promote the public health, safety, or welfare." Tex. Loc. Gov't Code § 243.0031(b). And Section 2(c) prohibits municipalities and counties from authorizing performances they deem "sexually oriented" on public property or in front of minors. Tex. Loc. Gov't Code § 243.0031(c). Because the municipalities are charged with enforcing Section 2, they are obvious and proper targets for an action challenging that portion of S.B. 12.

### A. *Monell* liability covers a broad spectrum of municipal actions.

Section 1983 makes "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage," deprives another of their constitutional rights liable for those violations. 42 U.S.C. § 1983. Municipalities and counties are "persons" for purposes of section 1983, but can only be liable when an "action pursuant to [an] official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Under that rule, municipalities cannot be liable under Section 1983 on a respondeat superior theory, but can when their employees "execut[e] … a

government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."[1] *Id.* at 694.

Although *Monell* did not address "the full contours of municipal liability," *id.* at 694–95,[2] from it, courts extracted a three-part test for municipal liability. In this Circuit, the test requires a policy maker, an official policy, and a "violation of a constitutional right whose moving force is the policy or custom." *Arnone v. Dallas Cnty.*, 29 F.4th 262, 265–66 (5th Cir. 2022) (internal quotations omitted) (quoting *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018)).

Although these three elements are repeated in nearly all municipal liability cases, in practice, courts recognize that an official policy "can arise in various forms." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). And in *Board of County Commissioners v. Brown*, 520 U.S. 397 (1997), the Court endorsed a

---

[1] Contrary to what one of the Municipal Defendants argues, *Monell* and its progeny do not address the availability of respondeat inferior (whether a municipality can be liable for a state policy).

[2] *See also Languirand v. Hayden*, 717 F.2d 220, 223 (5th Cir. 1983) ("The Court in Monell did not address all the possible variations and permutations of section 1983 actions against municipalities.").

sliding-scale approach to *Monell* causation that depends on who inflicts the complained-of constitutional injury. When "the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law," it automatically follows that "the municipal action was the moving force behind the injury of which the plaintiff complains." *Id.* at 405. In contrast, when the municipality itself does not inflict the injury, but its policy allegedly caused an employee to inflict it, "rigorous standards of culpability and causation must be applied." *Id.*

Under this approach, a single act can trigger municipal liability. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). This includes "single instances of conduct perpetrated by the policymakers themselves." *Milam v. City of San Antonio*, 113 F. App'x 622, 626 (5th Cir. 2004) ("[S]uch one-time conduct can represent official 'policy' even though it does not necessarily form part of a plan or rule developed to govern all like occasions."). And it can also include single acts perpetrated by non-policymakers in some cases. *Id.* (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988)).

The Supreme Court's decision to craft tests specific to certain types of municipal liability claims also reflects its recognition that a

municipal policy can arise in various forms. In *Brown*, for example, the Court held that a municipality could be liable for a particular hiring decision when that decision reflected a "deliberate indifference" to the risk of future constitutional deprivations. *Brown*, <u>520 U.S. at 414</u>–15. A similar showing is required for allegations that a municipality failed to adequately train its employees. *See City of Canton v. Harris*, <u>489 U.S. 378, 388</u>–89 (1989) ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom ....'").

This broad-spectrum approach to municipal liability is an important lens through which to view this pre-enforcement First Amendment action. Because of the district court's injunction, S.B. 12 is not yet enforceable, so of course the municipalities have yet to enforce Section 2. But no city or county has disavowed it either. The threat that they will enforce Section 2 is "latent in the existence of the statute." *Speech First*, <u>979 F.3d at 336</u> (quoting *Majors v. Abell*, <u>317 F.3d 719, 721</u> (7th Cir. 2003)). Thus, the Court should assume the municipalities will follow S.B. 12 as it evaluates their liability.

**B.** **Application of the *Monell* test supports municipal liability.**

Section 2 of S.B. 12 requires municipalities to regulate sexually oriented performances: it forbids municipalities from authorizing "sexually oriented" performances on public property or in front of minors. Tex. Loc. Gov't Code § 243.0031(c). The municipalities do not dispute that they will enforce Section 12 if the injunction is lifted. And when they do, the municipalities will have to decide which performances are sexually-oriented—a question likely to be subjective since the Plaintiffs and Defendants here disagree on whether drag is arguably sexually oriented. This satisfies the *Monell* test for municipal liability.

**1.** ***The municipalities' actions under S.B. 12 will be official policies.***

The first *Monell* factor asks whether there is a municipal policy. Identifying a policy ensures that a municipality is held responsible only for "deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Brown*, 520 U.S. at 403–04.

The Municipal Defendants claim they cannot enact their own policies because S.B. 12 is a state statute. But this argument elides two critical facts. First, no Municipal Defendant has disavowed enforcement of Section 2—a conscious choice of the municipalities—and there is "no reason to assume" that they would not enforce it against Plaintiffs, especially in this pre-enforcement posture. *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988). In fact, at least one Municipal Defendant admits that it will enforce S.B. 12 if the injunction is lifted. (*See* Abilene Reply Br. at 5–6.)

Second, when enforcing Section 2, municipalities will make conscious policy choices that restrict constitutionally protected activity. They will interpret S.B. 12's definition of sexually oriented performances and make the subjective determination of whether a given drag performance fits within that definition. And given this case's pre-enforcement posture, this Court should assume that they will exercise that authority against Plaintiffs. *See Book People*, 91 F.4th at 330 ("[W]e assume that Plaintiffs face a credible threat of enforcement" absent "compelling contrary evidence." (quoting *Speech First*, 979 F.3d at 335)).

This circuit has yet to consider whether municipal acts under a state statute can create Section 1983 municipal liability. But all of the Circuit Courts of Appeals that have considered that question have found that municipalities are liable for at least some of their actions taken pursuant to state statute. The first group of cases look at whether the state statute includes an explicit grant of discretion to the municipal actor. *See Vives v. City of New York*, 524 F.3d 346, 353 (2d Cir. 2008) ("[I]f a municipality decides to enforce a statute that it is authorized, but not required, to enforce, it may have created a municipal policy."); *Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors*, 854 F. App'x 521, 530 (4th Cir. 2021) ("[W]hether a local government entity's policy of enforcing a state statute renders it susceptible to *Monell* liability turns on 'whether a municipal policymaker has made a meaningful and conscious choice that caused a constitutional injury.'" (quoting *Vives*, 524 F.3d at 351)); *Garner* v. *Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (finding adoption of a deadly force policy consistent with, but more restrictive than, state law exposed municipal defendants to liability).

The second group of cases take a more expansive view and hold municipalities liable regardless of whether a statute explicitly confers discretion because municipalities create an actionable municipal policy when they choose to enforce an unconstitutional state law. *Cooper v. Dillon*, 403 F.3d 1208, 1223 (11th Cir. 2005) ("While the unconstitutional statute authorized Dillon to act, it was his deliberate decision to enforce the statute that ultimately deprived Cooper of constitutional rights and therefore triggered municipal liability."); *Evers v. Custer Cnty.*, 745 F.2d 1196, 1203 (9th Cir. 1984) (concluding that a county's reliance on state law was irrelevant because reliance relates only to the county's good faith and does not relieve counties of liability). None of the circuits go so far as to adopt the *per se* no-liability rule that Defendants propose.[3]

---

[3] Some of these decisions (and Defendants) suggest that the rule is different in the Seventh Circuit. *See Bruce & Tanya*, 854 F. App'x at 530; *Cooper v. Dillon*, 403 F.3d at 1222. But in the Seventh Circuit case they cite, *Surplus Store & Exchange, Inc. v. City of Delphi*, "[t]here [were] so many problems …, it [was] hard to know where to begin." 928 F.2d 788, 789 (7th Cir. 1991). Plus, in *Surplus Store* there was no allegation that a municipal policymaker made a deliberate choice or exercised discretion authorized by state law to cause a constitutional harm. Instead, the *Surplus Store* plaintiffs merely referenced three state statutes when asked to identify a municipal policy. *Id.* at 790–91; *see also Vives*, 542 F.3d at 352 (distinguishing *Surplus Store* because it

The second group of cases have the better rule. They recognize that municipalities make a series of policy choices whenever they enforce an unconstitutional state law whether or not there is an explicit grant of discretion. These decisions acknowledge the basic fact that a decision to enforce a law is a "deliberate choice to follow a course of action." *Cooper*, 403 F.3d at 1223 (quoting *Pembaur*, 475 U.S. at 483). And recognizing municipal liability in these cases is consistent with courts' openness to First Amendment pre-enforcement actions: Plaintiffs do not have to choose between refraining from protected speech or risking municipal enforcement.

This principle—that a municipal choice to enforce an unconstitutional state law and exercise whatever discretion it confers creates liability—is consistent with *Monell*'s instruction that municipalities can be held liable when "action pursuant to official municipal policy of some nature caused a constitutional tort." 436 U.S.

did not involve the enforcement of a state statute and did not allege policymaker involvement). The Seventh Circuit has since suggested that *Surplus Store* is consistent with the first group of cases, distinguishing "between the state's command (which insulates the local government from liability) and the state's authorization (which does not)." *Bethesda Lutheran Homes & Servs., Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998).

at 691. For purposes of *Monell*, an official policy represents a "deliberate choice … made from among various alternatives by the official or officials responsible for establishing final policy." *Pembaur*, <u>475 U.S. at 483</u>. When a municipality chooses to enforce an unconstitutional state statute, they make a deliberate choice that subjects them to Section 1983 liability.

Under either line of cases, Section 2 triggers Section 1983 liability. Although phrased as a mandate—prohibiting municipalities from authorizing sexually oriented performances on public property or in front of minors—this provision also requires the exercise of significant municipal discretion. That discretion is inherent in the term "sexually oriented performances," which S.B. 12 defines to mean a visual performance that, among other requirements, "appeals to the prurient interest in sex." S.B. 12, § 3(a)(2). But the statute does not define "prurient interest." While this phrase is borrowed from obscenity law, it lacks the guardrails or context that the rest of that standard provides. *See Miller v. California*, <u>413 U.S. 15, 24</u> (1973).

Throughout this litigation, Plaintiffs stated their confusion with the term sexually oriented performance, not knowing how to assess

whether their performances violate the standard. While Plaintiffs do not believe their performances are sexually oriented, the proponents of S.B. 12 thought otherwise. *See* Bill Analysis, S.B. 12 (Tex. 2023), available at https://tinyurl.com/muefd7df (last accessed Apr. 8, 2024) (equating drag with sexually oriented performance). Given this confusion, the district court correctly found that this term is "open to interpretation" among enforcers. (Dist. Ct. Order at 15, ¶ 32.) When deciding whether to authorize a performance, a municipality will inevitably make choices: to enforce the law at all, to ascertain the meaning of sexually oriented performance, and tonevaluate whether a proposed performance meets its interpretation of that standard. This "meaningful and conscious choice" satisfies *Monell* and triggers municipal liability. *Bruce & Tanya*, 854 F. App'x at 530.

Indeed, consider the run-of-the-mill process by which a municipality would enforce S.B. 12. Plaintiffs Abilene Pride and Woodlands Pride seek permits from the municipalities to host events. Both Defendant City of Abilene and Montgomery County have permit processes for such events that require applicants to submit a description of their events. In assessing these applications, municipal

officials will carry out consciously decided policies to enforce S.B. 12 in deciding whether to grant or deny the permit. This is the exact type of "conscious choice" that the Circuits cited above have found warrants *Monell* liability. *See Vives*, 524 F.3d at 353; *Cooper*, 403 F.3d at 1223.

Plaintiffs should not have to wait for the Municipal Defendants to deprive them of their constitutional rights before seeking relief. *See Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 932 (5th Cir. 2023) ("One does not have to await the consummation of threatened injury to obtain preventive relief." (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985))). Section 1983 is there to "serve as a deterrent against future constitutional deprivations." *Owen v. City of Independence*, 445 U.S. 622, 651 (1980). In other words, allowing pre-enforcement review of the claims against the municipalities will prevent constitutional deprivations from occurring and encourage the municipalities to "err on the side of protecting citizens' constitutional rights." *Id.* at 652.

> **2.      S.B. 12 empowers the ultimate policymaker—the municipalities themselves.**

The policymaker requirement ensures that municipalities are held liable only for their own actions, and not the actions of their employees.

Case in point: *Monell* itself never used the phrase "policymaker," 436 U.S. 658 *passim*. But later decisions ask trial courts to consider "those officials or governmental bodies who speak with final policymaking authority" for the municipality. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *see also McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 (1997). Those officials are policymakers because their "decisions represent the official policy of the local governmental unit." *Arnone*, 29 F.4th at 266. Because it empowers municipalities and counties themselves to regulate and deny permits to sexually oriented performances, S.B. 12 contemplates action by the municipalities and their key policymakers.

All the named municipal and county defendants have policymakers who stand ready to enforce S.B. 12. *See* Abilene, Tex., Code, Part I, Art. I, § 2 ("[A]ll powers of the city shall be vested in an elective council … which shall enact legislation, adopt budgets, [and] determine policies."); *id.* at Part. I, Art. II § 10; Commissioner's Court, Montgomery County, https://tinyurl.com/4atar3ee (last visited Apr. 8, 2024) ("The Commissioners Court is the governing body of the county."); Resolutions, Taylor County, https://tinyurl.com/bdfxc4xt (last visited

Apr. 8, 2024) (listing resolutions passed by the Taylor County Commissioners' Court). When these policymakers (and others policymakers to whom they delegate authority) regulate sexually oriented performances or deny permit applications because of S.B. 12, those actions will "necessarily establish[] that the municipality acted culpably." *Brown*, <u>520 U.S. at 405</u>.

What is more, when these policymakers follow S.B. 12, they will act as policymakers for their municipalities, not the state. To determine what level of government they act for, the relevant question is what "precise 'function'" that policymaker exercises. *Arnone*, <u>29 F.4th at 271</u>. This inquiry focuses on "the nature of the action or omission," not other factors. *Los Angeles Cnty. v. Humphries*, <u>562 U.S. 29, 37</u> (2010).

Here, any actions the municipalities take under S.B. 12 will be taken while exercising local functions. When a municipality chooses to grant or deny a permit for a parade or public gathering, it will be exercising a fundamentally local function. That S.B. 12 may have triggered or informed that choice is irrelevant. *Arnone*, <u>29 F.4th at 271</u> ("Whether the specific application of that function represents official

policy of the state or not **does not enter into our analysis**."

(emphasis added)).

### 3. Municipal policies are the moving force behind Plaintiffs' First Amendment deprivations.

Here, the final *Monell* factor is the easiest. When a municipality itself—through its City Council or other policymakers—enacts an unconstitutional policy, causation is established. *See Brown*, 520 U.S. at 405 ("[T]he conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains."). A plaintiff's allegations "that a municipal policy or ordinance is itself unconstitutional is always sufficient to establish the necessary causal connection between the municipality and the constitutional deprivation." *Vives*, 524 F.3d at 357. This is because "an employee's act of enforcing an unconstitutional municipal policy may be considered the act of the municipality itself." *Id.* (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004)).

Causation here is straightforward. Because Section 2 of S.B. 12 gives municipalities power to restrict constitutionally protected conduct

altogether, the municipalities' policies will have directly caused Plaintiffs' constitutional deprivations. Thus, the municipality will be the moving force behind the deprivation, and Plaintiffs' claims against the municipalities satisfy *Monell*.

## III. Pre-enforcement liability for the District Attorney Defendants is also appropriate.

Section 3 of S.B. 12, meanwhile, contemplates district attorney enforcement by making sexually oriented performances on public property or in front of a minor misdemeanor violations of the Penal Code. Tex. Penal Code § 43.28(b) & (c). As the lead prosecutors for their respective judicial district, the District Attorney Defendants are tasked with enforcing this and other portions of the Penal Code. Tex. Code of Crim. P. Art. 2.01; Tex. Gov't Code § 43.105(b). As prosecutors, district attorneys are "natural targets for § 1983 injunctive suits." *Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 736 (1980).

State law also **compels** the district attorneys to prosecute violations of Section 3. Last September, the Texas Local Government Code was amended to define "adoption or enforcement of a policy of refusing to prosecute a class or type of criminal offense" as "official misconduct." Tex. Loc. Gov't Code § 87.011(3)(B). As a result, the

District Attorney Defendants can be removed from office if they refuse to prosecute violations of S.B. 12, Section 3.[4] *Id.* § 87.013(a)(2).

Given this, the District Attorney Defendants are the obvious and appropriate defendants for challenges to Section 3 of S.B. 12. But rather than accept this and defend on the merits, they try to avoid liability by arguing that they are entitled to Eleventh Amendment immunity and not subject to the *Ex parte Young* exception. (Taylor Cnty. Br. at 9–13; Montgomery Cnty. Br. at 26–33.) On both counts, they are wrong.

### A. Because the district attorneys are local officials, they are not entitled to Eleventh Amendment immunity.

First and most obviously, the county District Attorney Defendants are not state officials entitled to immunity. In a recent decision, a panel of this Court confirmed that, for purposes the Eleventh Amendment, Texas district attorneys are not state officials. *McCraw*, 90 F.4th at

---

[4] The threat of removal is not merely hypothetical: Attorney General Paxton has proposed a rule enhancing district attorney reporting requirements. *See* 49 Tex. Reg. 1357, 1357–60, available at https://tinyurl.com/yckkwmv4 (last visited Apr. 6, 2024). In the press release announcing the proposed rule, he called out prosecutors who choose not to prosecute certain types of crimes. *See* Mar. 13, 2024 Press Release, Ken Paxton Att'y Gen. of Tex., available at https://tinyurl.com/2khpwad3 (last visited Apr. 6, 2024).

787.[5] While acknowledging that a few unpublished decisions had held otherwise, the *McCraw* court explained that district attorneys were county officials. *Id.*; *compare Crane v. Texas*, 766 F.2d 193, 194–95 (5th Cir. 1985) (district attorneys are not state officials), *with Quinn v. Roach*, 326 F. App'x 280, 292–93 (5th Cir. 2009) (district attorneys are state officials).

Despite this unambiguous holding (and their reliance on other parts of *McCraw*), the District Attorney Defendants argue that they should be treated as state officials because of the nature of Plaintiffs' allegations and the obligations imposed by S.B. 12. (Taylor Cnty. Br. at 9–12; Montgomery Cnty. Br. at 27–30.) But *McCraw* endorses a "categorical" approach to Eleventh Amendment immunity, not a case- or statute-specific analysis. 90 F.4th at 787. The Court should adopt the "categorical" rule recognized by *McCraw* and refuse to grant Eleventh Amendment immunity to the District Attorney Defendants.

---

[5]Defendants cite a subsequently withdrawn and superseded version of *McCraw*. Our citations are to the more recent, controlling opinion.

**B. Even if the district attorneys are state officials, they are not entitled to sovereign immunity.**

Further, even if the Court were to classify the District Attorney Defendants as state officials, they easily satisfy the exception created by *Ex parte Young*, 209 U.S. at 155–56 (1908). *Young* and its progeny allow a federal court to enjoin state officers "who threaten and are about to commence proceedings" to enforce an unconstitutional act. *Id.* That exception to sovereign immunity rests on the "fiction" that a "state official enforcing an unconstitutional act is not acting for the sovereign state and therefore is not protected by the Eleventh Amendment." *Okpalobi v. Foster*, 244 F.3d 405, 411 (5th Cir. 2001).

The *Young* exception applies—and a state official is not entitled to immunity—when they have "some connection with the enforcement of" **or** are "specifically charged with the duty to enforce" the law in question.[6] *United States v. Abbott*, 85 F.4th 328, 334 (5th Cir. 2023) (quoting *Ex parte Young*, 209 U.S. at 157–58). The focus of this inquiry is on whether an official has "enforcement authority" as to a challenged

---

[6] There is no debate that Plaintiffs allege Defendants' enforcement of S.B. 12 violates federal law and seek purely prospective injunctive and declaratory relief.

statute. *Whole Women's Health*, 595 U.S. at 43–44. The claims against district attorneys, who have authority to enforce Section 3 and can be removed from office for failing to do so, easily pass this test. Plaintiffs sought to prevent the district attorneys from prosecuting groups or individuals under Section 3, exactly the sort of "positive act" that can be enjoined under *Young*. *Abbott*, 85 F.4th at 334.

The District Attorney Defendants' attempts to avoid this result are unpersuasive. For one, they claim that Plaintiffs failed to show a "demonstrated willingness to enforce" Section 3. (Taylor Cnty. Br. at 13; Montgomery Cnty. Br. at 32–33.) That, however, is not the standard. The Supreme Court has never endorsed—or even mentioned— "demonstrated willingness" in the *Young* context. Plus, none of the cases Defendants cite in support of that standard are pre-enforcement challenges, and even they do not support such a bright line rule.[7] As this Court has recognized, the "line" at which enforcement is enough to satisfy *Young* "evades precision." *Tex. Democratic Party I,* 961 F.3d at

---

[7] *See Tex. Democratic Party v. Abbott*, 961 F.3d 389, 401 (5th Cir. 2020) ("*Tex. Democratic Party I*"); *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) ("*Tex. Democratic Party II*"); *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014).

401. And another panel of this Court has questioned whether "demonstrated willingness" is a controlling standard, noting that it originated from a plurality-supported portion of *Okpalobi*. *City of Austin v. Paxton*, <u>943 F.3d 993, 999</u> (5th Cir. 2019).

In any event, even if "demonstrated willingness" is the standard, the Court should find it has been met here. Neither district attorney has committed to not enforcing Section 3. Especially when this silence is combined with the fact that the district attorneys can be removed from office for refusing to prosecute violations of Section 3, the Court should find a "demonstrated willingness" to enforce S.B. 12.

To require a greater showing would unacceptably constrain litigants' ability to bring pre-enforcement challenges. When laws are challenged before going into effect, no official will have had a history of enforcement, and only in rare cases will an official have made affirmative threats of future enforcement. Requiring a pre-enforcement litigant to point to affirmative acts or statements by an official about their plans to enforce would contradict the "scintilla of enforcement" that *Young* requires. *Book People*, <u>91 F.4th at 335</u> (quoting *Tex. Democratic Party v. Abbott*, <u>978 F.3d 168, 179</u> (5th Cir. 2020) ("*Tex.*

*Democratic Party II*"). And it would force litigants into the same choice between foregoing rightful conduct or risking prosecution that pre-enforcement challenges are designed to avoid. *See Susan B. Anthony List*, 573 U.S. at 167–68; *Steffel*, 415 U.S. at 462.

To resolve this tension, in pre-enforcement cases the Court should focus on whether the public officials' connection to the challenged statute involves "compulsion or constraint." *Richardson v. Flores*, 28 F.4th 649, 655 (5th Cir. 2022) (quoting *City of Austin*, 943 F.3d at 1000). Under that test, "[i]f the official does not compel or constrain anyone to obey the challenged law," they lack the necessary connection to satisfy *Young*. *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022). Because the district attorneys can—indeed, must— prosecute violations of Section 3, they clear this hurdle.

Perhaps because of this, the District Attorney Defendants rely on *McCraw* to claim that their duty to enforce state law is not enough to satisfy *Ex parte Young*. (Taylor Cnty. Br. at 13; Montgomery Cnty. Br. at 27, 33.) In truth, *McCraw* held that a "general duty to see that the laws of the state **are implemented**" did not satisfy *Young*'s connection requirement. *McCraw*, 90 F.4th at 785–86 (emphasis added). But there

is a difference between the general duty to **implement** the laws of a stated, and the specific duty to **enforce** that state's law, which is sufficient to trigger *Ex parte Young*. *See Okpalobi*, <u>244 F.3d at 416</u>–17; *see also McCraw*, <u>90 F.4th at 786</u>. Because the District Attorneys Defendants have a duty to **enforce** the penal code and face removal from office if they refuse, they have an adequate connection to Section 3.

The District Attorney Defendants appear to be suggesting that, unless a statute specifically identifies them as enforcing officials, they would never have a sufficient connection for the *Ex parte Young* exception to apply. But the source of this argument is *Okpalobi*, which does not support the rule Defendants suggest. Instead, that court held that the duty to enforce a challenged law can be "drawn implicitly … so long as there is sufficient indicia of the defendant's enforcement powers found elsewhere in the laws of the state." *Okpalobi*, <u>244 F.3d at 418</u>–19. Because district attorneys are the **only** government officials with the duty to enforce the penal code, *State v. Stephens*, <u>663 S.W.3d 45, 52</u> (Tex. Crim. App. 2021), there is sufficient indicia of enforcement power. Therefore, the District Attorney Defendants cannot be entitled to Eleventh Amendment immunity.

## CONCLUSION

For these reasons, TCRP encourages the Court to hold that the City of Abilene, Taylor and Montgomery Counties, and the district attorneys are proper defendants to Plaintiffs' challenges to Sections 2 and 3 of S.B. 12. Further, TCRP requests that the Court affirm the district court's decision.

Dated: April 17, 2024

Respectfully submitted,

*s/ Meghan Frei Berglind*
Meghan Frei Berglind
Elizabeth Poché
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: 303.244.1800
Email:  berglind@wtotrial.com
           poche@wtotrial.com

Travis Fife
Dustin Rynders
Molly Petchenik
TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive,
Austin, TX 78741
Telephone:  512.474.5073
Email:travis@texascivilrightsproject.org

Attorneys for *Amicus Curiae*, Texas
Civil Rights Project

**CERTIFICATE OF SERVICE**

I certify that I electronically filed the foregoing on April 17, 2024, with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*s/Meghan Frei Berglind*

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed.

R. App. P. 32(a)(7)(B) because:

[X] this brief contains 6,016 words, excluding the parts of the brief
exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type style requirements of Fed. R. App. P.

32(a)(6) because:

[X] this brief has been prepared in a proportionally spaced
typeface using Microsoft Word 2016 in Times Roman 14 point font.


Dated: April 17, 2024                    s/ *Meghan Frei Berglind*
                                   _____